THE OKLAHOMA AGRICULTURAL AND MECHANICAL COLLEGE
v. CHARLES F. WILLIS AND WILLIAM F. BRADFORD.
(Filed February 18, 1898.)

PUBLIC CORPORATIONS—*Liability to be Sued—How Created.* The Agricultural and Mechanical college, which is strictly a public or *quasi* corporation, created and existing under and by virtue of the
38—

laws of the Territory of Oklahoma, cannot, in the absence of express statutory authority therefor, be sued, and no such authority exists in this Territory, hence said institution cannot be sued.

(Syllabus by the Court.)

*Error from the District Court of Payne County; before Frank Dale, District Judge.*

*C. A. Galbraith, Attorney General,* for plaintiff in error.

*King & Hutto,* for defendants in error.

This action was brought by defendants in error. (plaintiffs below,) as partners, against plaintiff in error for a balance alleged to be due them from the said plaintiff in error upon a written contract, for the furnishing of certain material, and the performance of certain labor in repairing and fitting up some of the rooms in the main college building of defendant below.    Reversed.

Opinion of the court by

KEATON, J.: Several assignments of error are urged by counsel, but, under our view of this case, it is not only unnecessary, but would be improper, for us to pass upon any of the assignments argued.  The judgment complained of, omitting certain formal parts, is as follows: "It is therefore ordered and adjudged by the court that the plaintiffs, Charles F. Willis and W. R. Bradford, have and recover of the defendant, the Oklahoma Agricultural and Mechanical college, the sum of $610.31, and that the same bear interest at the rate of 7 per cent. per annum from this date, and for the further sum of——dollars as the cost of this suit, and thereon let execution issue after thirty days from this date; to all of which the defendant excepts."

It is strenuously insisted that, as there is no statute of this Territory expressly authorizing the issuance of executions against the property of public corporations, no execution can run against such property, and we think there is much force in this contention, although the authorities thereon are very much divided. (Dillon's Municipal Corporation [4th Ed.] sec 576.)  But, although the position has not been urged, or even referred to by counsel for plaintiff in error, I am convinced that we must go further, and hold that no action can be maintained against the defendant, for the reason that there is no statute authorizing it to sue or be sued.  That defendant is a public corporation under the laws of the Territory of Oklahoma, there can be no doubt.  Section 143 Oklahoma Statutes, 1893, provides: "The institution shall be known as the Oklahoma Agricultural and Mechanical college, and shall be an institution corporate under the laws of Oklahoma and the government and management thereof is hereby vested in a board of regents, to be known as the Agricultural and Mechanical College Board of Regents."   In addition to the foregoing express provision, said college is to be supported entirely from public funds, and is under the direct and almost immediate control of the territorial legislature. (See *ibid* secs. 151, 159, 385, 386, 387 and 389.)

The question of whether or not defendant can be sued, being a jurisdictional one, must be first determined, although not specifically called to our attention, and, as we hold that no suit can be maintained against said defendant, any opinions which we might express upon the points argued by counsel, would be mere *dicta*, hence, we confine this opinion to the one proposition necessary for a decision of the cause.

In the celebrated case of *Darmouth College v. Woodward*, Chief Justice Marshall, delivering the opinion of the majority of the court, uses the following language:

"That education is an object of national concern, and a proper subject of legislation, all admit. That there may be an institution founded by government, and placed entirely under its immediate control, the officers of which would be public officers, amenable exclusively to government, none will deny."

And in the same cause, Justice Story, in a very able concurring opinion says:

"Public corporations are generally esteemed such as exist for public political purposes only, such as towns, cities, parishes, and counties; and in many respects they are so, although they involve some private interests; but strictly speaking, public corporations are such only as are founded by the government for public purposes, where the whole interests belong also to the government." (4 Wheaton, U. S. 518.)

It will be readily observed that defendant is strictly a public or *quasi* corporation. The members of its managing board, (board of regents,) are public officers appointed by the governor and legislative council of the Territory, their terms of office and compensation for services performed being definitely fixed by statute. (Secs. 148 and 150, Stat. 1893.)   In fact, as before stated, it is strictly and entirely a territorial institution, having been created by legislative enactment for public purposes only, being managed and controlled exclusively by and under legislative authority, and deriving its whole support from public funds.

As to the distinctions between public and private corporations and between the different classes of public corporations, it is said by an eminent text writer that:

"All corporations intended as agencies in the administration of civil government are public, as distinguished from private corporations. Thus an incorporated school district, or county, as well as city, is a public corporation; but the school district or county, properly speaking, is not, while the city is a municipal corporation. All municipal corporations are public bodies, created for civil or political purposes; but all civil, political or public corporations are not, in the proper use of language, municipal corporations. The phrase 'municipal corporations,' in the contemplation of this treatise, has reference to incorporated villages, towns and cities, with power of local administration, as distinguished from other public corporations, such as counties and *quasi* corporations." (Dillon's Municipal Corporations, [4th Ed.] sec. 22; *id.* secs. 23, 24, 25 and 26; *Comm'rs. Hamilton Co. v. Mighels,* 7 Ohio St. 109; *Finch v. Board of Education,* 30 Id. 37; *Manuel v. Comm'rs.,* 98 N. C. 9—3 S. E. 829; *Dosdall v. County Com'rs.* [Minn.] 14 N. W. 458; *Eastman v. Clackamas Co.,* 32 Fed. 24.)

In *Finch v. Board of Education, supra,* it is said:

"City and village school districts constitute a part of the state policy in promoting and fostering common schools, and have become state agencies in the school system of education contemplated in the constitution. * * Owing to the very limited number of corporate powers conferred on them, boards of education rank low in the grade of corporate existence, and hence are properly denominated *quasi* corporations. This designation distinguishes this grade of corporations from municipal corporations, such as cities and towns acting under charters or incorporating statutes, which are vested with more extended powers and a larger measure of corporate life. This superior grade, from the nature of their organization, benefits received, and powers to raise needed funds, are held responsible, by the common law, for private personal injuries caused by their own negligence or that of their

servants, whilst the inferior grade of public *quasi* corporations are liable for damages resulting from their negligence, only where made so by express legislation. This grade includes the defendant. It possesses but limited powers and a small corporate life. A corporation in some sense political, but in no sense a municipal corporation."

As already seen, the various sections of the acts creating and locating this institution and authorizing the issuance of bonds and the levying of taxes for the erection and support thereof, provide how, by whom and for what purposes, all the funds appropriated for its use shall be disposed of. While section 147, Statutes 1893, authorizes it to take title to real estate, make contracts, locate and erect buildings, "and do all things necessary to make the college effective as an educational institution," yet, it does not follow, from the granting of these powers, that the corporation can be sued. In the absence of statutory authority therefor, it is the rule of the common law, adhered to by most, if not all, of the American states, that no suit can be brought, much less execution issued, against a corporation which is strictly public, generally called a *quasi* municipal corporation, such as a county school district, or road district.

"In this case a sovereign is one of the contracting parties; for the government of the county of Contra Costa is a portion of the state government, and as against a sovereign there are no remedies except such as the sovereign, in the exercise of that good faith by which all governments are presumed to be actuated, may accord. The state government, neither in its general nor its local capacity, can be sued by her creditors or made amenable to judicial process except by her own consent. Her creditors must rely solely upon her good faith as to the time, mode and measure of payment.    *    *

"At the time the contract was made between Gillman and the state, as represented in the local government of Contra Costa county, no remedies in a judicial sense existed either against the state or county.  *  *  The subsequent passage of the act by which persons holding claims against counties were allowed to sue them, when such claims were rejected by the county government, did not at all improve the condition of Gillman or his assignee in this respect, nor add to the obligation of the state or county to pay his claim.  A judgment under that act, against a county only, had the effect of converting a disputed into an audited claim.  Beyond the entry of judgment the judiciary were not authorized to proceed, and hence in respect to payment, Gillman and his assignee had no higher claim after he obtained his judgment than before, and, as before, was still dependent upon the good faith of the state.  His remedy—if remedy it may be called—still lay in the voluntary exercise of the taxing power of the state.  In other words, the state, by reason of her sovereignty, still held control of the question of payment as to all its incidents of time, mode and measure."  (*Sharp v. Contra Costa County*, 34 Cal. 284; *Gillman v. Contra Costa County*, 8 *id.* 52; *Emeric v. Gillman*, 10 *id.* 404; *Hunsaker v. Borden*, 5 *id.* 288.)

"Counties being merely parts of the state government, they partake of the state's immunity from liability.  The state is not liable, except by its own consent; and so the county is exempt from liability, unless the state has consented.  Counties are not liable to implied common law liabilities as municipal corporations are."  (Am. & Eng. Enc. Law, 359; *Claiborne County v. Brooks*, 111 U. S. 400.)

"As has already been stated, the county is the creation of the legislature and a part of the sovereign government, and as such it cannot be sued except by the consent of the state.  Therefore, persons dealing with the county, for whose liabilities the legislature has provided no means of enforcement, must rely wholly upon its good faith, or they

must seek a remedy by application to the legislature."
(4 Am. & Eng. Enc. Law, 369 and cases cited in notes 4,
5 and 6.)

"In *Rusch v. The City of Davenport,* 6 Iowa 443, doubt
was expressed, whether in this state, and under our stat-
utes, a road district could sue or be sued as a corporation.
*   *   We have no law declaring that each district shall
constitute or be a body corporate, capable of suing or
being sued.   Nor is there any statute giving them the
power to sue, or making them liable to a civil action.   It
is provided that each road district shall be responsible
for all damages sustained by any person in consequence
of defects in the roads and bridges in said district.   Be-
yond this, there is nothing to indicate that they are to
be treated as corporations; nor is there any provision as
to how they are to be made responsible for the damages
sustained in consequence of defects in roads and bridges.
Under such circumstances, we are of the opinion, that a
road district cannot become a party in a court of justice
in this state as a corporation, *quasi,* or otherwise."( *White
v. Road District* 9 Io. 202.)

It seemingly needs no argument to show that the pub-
lic educational institutions of a state are as much a part
of its sovereignty as are its counties.   If defendant can
be sued, so can all the other territorial educational in-
stitutions.   The established rule of law as well as the
civil political policy of almost every state in the union
forbid such suits, and we have no disposition to vary this
rule, which is so well founded both in reason and author-
ity, so as to except therefrom the young though thriving
educational institutions of this Territory.   To hold that
these institutions can be sued and the property, held by
them for the most important of all public purposes,
seized under execution, attachment and other such pro-
cess, would be to greatly impede their progress and use-

fulness, while it has ever been the policy of our people, through their legislative assemblies, to foster and encourage them in every proper way. The obligations of the defendant in the case at bar are the obligations of the Territory, (sec. 185 hereinbefore cited) and to the Territory its creditors must look for payment where there is no fund appropriated for the payment of their claims. If a fund exists for the payment of any just claim against defendant and the board of regents refuse to audit the same, I have no doubt but that the creditor can maintain an action in *mandamus* to compel the board to pass upon and properly audit such claim. Probably this board could be so compelled to audit such a demand, even though no fund existed out of which it could be paid, but, in this event, if his claim should be allowed, the claimant would have to look to the legislative power of the Territory for payment. (*McCauley v. Brooks*, 16 Cal. 11.)

A similar question to the one under consideration was decided in *Drake v. Board of Trustees*, 11 Io. 54, wherein the plaintiff sued the board of trustees of the Normal school at Oskaloosa, in their corporate capacity "for work and labor done, and materials furnished in and about the erection of a house for the use of said school," and the trial court sustained a demurrer to plaintiff's petition, which ruling was affirmed on appeal, both courts holding that the action could not be maintained against the defendant as a corporation. In passing upon the question presented in that case, the supreme court says, in part, the following:

"To hold that, under such circumstances, plaintiff could maintain this action against defendant named, would be in effect to disregard the general laws of the

state, upon the subject of corporations, whether for pecuniary benefit or otherwise. There is no provision of law anywhere, that either expressly or by implication, recognizes the defendant sued, in this case, as a body capable of suing or being sued. * * If it is asked, has the plaintiff no remedy? We answer that we only determine that he has none against the defendant as named in this record. It may be that the persons contracting with him may be liable to him as individuals, or that he must look for compensation or aid to the law-making power of the state, or the liberality of the friends of education, and especially those disposed to encourage the school named. None of these questions do we undertake to determine."

In the statutes of some of the states is found a provision under the general head of "Corporations," authorizing all public corporations to sue and be sued, unless expressly prohibited by the laws creating them and providing for their management and control. The statutes of Oklahoma contain no such general provision but, on the contrary, it is provided that "public corporations are formed or organized for the government of a portion of the Territory. Such corporations are regulated by local statute." (sec. 925, Stat. 1893.)

For the reasons stated, the judgment of the district court is reversed and the cause remanded, with directions that same be dismissed.

Dale, C. J., having presided in the court below, not sitting; all the other Justices concurring.