130 N.J. Super. 493 (1974)
327 A.2d 687
FRANK BRISCOE CO., INC., PLAINTIFF,
v.
RUTGERS, THE STATE UNIVERSITY AND COLLEGE OF MEDICINE AND DENTISTRY OF NEW JERSEY ET ALS., DEFENDANTS. BROADWAY MAINTENANCE CORP., PLAINTIFF,
v.
RUTGERS, THE STATE UNIVERSITY ET ALS., DEFENDANTS AND THIRD-PARTY PLAINTIFFS,
v.
FRANK BRISCOE CO., INC. ET ALS., THIRD-PARTY DEFENDANTS. EDWIN J. DOBSON, JR., INC., PLAINTIFF,
v.
RUTGERS, THE STATE UNIVERSITY ET ALS., DEFENDANTS AND THIRD-PARTY PLAINTIFFS,
v.
FRANK BRISCOE CO., INC. ET ALS., THIRD-PARTY DEFENDANTS.
DOCKET NO. L-9061-72.
Superior Court of New Jersey, Law Division.
Decided October 3, 1974.
*495 Mr. Theodore W. Geiser for plaintiff Briscoe and third-party defendant Firemen's Insurance (Messrs. McElroy, Connell, Foley & Geiser, attorneys).
Mr. Harold G. Smith for plaintiff Dobson (Messrs. Wilentz, Goldman & Spitzer, attorneys) and Mr. Richard R. Bonamo of the New York Bar.
Mr. C. Stephen Barrett, III, for plaintiff Broadway Maintenance (Messrs. Lum, Biunno & Tompkins, attorneys).
*496 Mr. Edward Schwartz, Deputy Attorney General, for defendants and third-party plaintiffs, Rutgers and College of Medicine and Dentistry (Mr. William F. Hyland, Attorney General, attorney).
Mr. Clyde A. Szuch as amicus curiae for Rutgers (Messrs. Pitney, Hardin & Kipp, attorneys).
DWYER, J.S.C.
In this action there are consolidated three separate suits commenced against Rutgers, The State University (Rutgers). The captions of the actions and the respective dates of commencement are:
Edwin J. Dobson, Jr. Inc. v. Rutgers  8/4/71 (hereinafter Dobson)
Frank Briscoe Co., Inc. v. Rutgers  12/8/72 (Briscoe)
Broadway Maintenance Corp. v. Rutgers  5/31/73 (Broadway)
Each action is based on one of six prime contracts dated October 31, 1966 for the construction of the Rutgers Medical School. Dobson had the plumbing and fire prevention contract for $998,413. Briscoe had the contract for general construction for $7,392,000. Broadway had the electrical contract for $2,508,650. Each of said contracts specified the work was to be done in 700 days of 23 months. The project took 48 months. The project was completed in 1970 instead of 1968.
When the Dobson suit was instituted the private firm of attorneys representing Rutgers filed the answer, and no defense of sovereign immunity was asserted. At the present time the Attorney General of the State of New Jersey has assumed the defense of that action and filed the answers in the other two actions and asserted that said actions were subject to the New Jersey Contractual Liability Act, N.J.S.A. 59:13-1 et seq.
By L. 1970, c. 102, N.J.S.A. 18A:64G-1, The Medical and Dental Education Act of 1970, the Legislature and Governor determined to combine all medical and dental colleges *497 receiving state support into one corporate entity. N.J.S.A. 18A:64G-3 and 30 provide for the transfer of Rutgers Medical School to the newly created College of Medicine and Dentistry of New Jersey (CMDNJ). Pursuant to an agreement entered into in June 1972 CMDNJ assumed all the rights, obligations and duties of Rutgers under the aforesaid contracts and agreed to indemnify Rutgers. It is the court's understanding that pursuant thereto the Attorney General then undertook the defense of the then pending Dobson claim and the defense of the later actions.
In the period between the commencement of the Dobson action and the later actions, the contractor and the State participated in settlement proceedings before a panel. There was an informal agreement that no other action would be commenced. No agreement was reached.
At the time the case was assigned to this court there were pending a number of motions, including a motion for partial summary judgment by the Attorney General to strike certain claims. Those pertaining to discovery have been disposed of and discovery is now complete. A pretrial is scheduled to be held in a few days. The pending motions have been amplified by the Attorney General and all parties have briefed and argued the motions. In order to properly prepare for a pretrial, the parties have requested the court rule now on as many of the motions as possible.
The court has set forth on the record the disposition of all motions except that based on the contention of the Attorney General that this action is controlled by N.J.S.A. 59:13-1 (New Jersey Contractual Liability Act), L. 1972, c. 45, in that under the laws of 1956 providing for the reorganization of Rutgers, N.J.S.A. 18A:65-1 et seq. (L. 1956, c. 61), Rutgers was initially not subject to suit on these contracts and is now subject to suit only under the New Jersey Contractual Liability Act.
The Attorney General bases this argument on the ground that the Rutgers, the State University Law, L. 1956, c. 61, N.J.S.A. 18A:65-1 et seq., does not authorize the board of *498 governors to sue or be sued. See N.J.S.A. 18A:65-25. He refers to the Report of the Attorney's Task Force on Sovereign Immunity dated May 1972 (Report), at 32, to show that N.J.S.A. 18A:65-1 et seq. is not one of the statutes included among the list of statutes which authorized a state agency "to sue or be sued". The expression "to sue and be sued" inserted in a statute creating an agency has been construed as a waiver of sovereign immunity. Report, at 32.
The Attorney General also urges that the Contractual Liability Act must be construed with the other provisions of Article 59, "Claims Against Public Entities," including the New Jersey Tort Claims Act, N.J.S.A. 59:1-1 et seq., L. 1972, c. 45. The comments to said law enacted by the Legislature state,
* * * For purposes of establishing liability in the State of New Jersey this definition ["Public Entity"] is specifically intended to include such entities as the New Jersey Highway Authority and Turnpike Authority and Rutgers, the State University.
The Attorney General further argues that under the decisions in Trustees of Rutgers College in New Jersey v. Richman, 41 N.J. Super. 259 (Ch. Div. 1956); Rutgers, The State University v. Kugler, 110 N.J. Super. 424 (Law Div. 1970), aff'd p.c. 58 N.J. 113 (1971), and Rutgers v. Piluso, 60 N.J. 142 (1972), the courts have repeatedly held that Rutgers is an "instrumentality of the State," "a state agency", and other similar expressions.
The Attorney General therefore concludes that since the board of governors was given no power "to sue or be sued," N.J.S.A. 18A:65-25, there is none and, consequently, since 1956 Rutgers has had available to it the defense of sovereign immunity; hence Rutgers meets the express criteria for the application of N.J.S.A. 59:13-2 which provides:
As used in this chapter:
State shall mean the State and any office, department, division, bureau, board, commission or agency of the State, but shall not include any such entity which is statutorily authorized to sue and be sued. * * *
*499 The Attorney General further concludes that since the contracts which form the subject matter of this litigation were entered into in 1966, they are subject to that defense except, and to the extent, that the Legislature in N.J.S.A. 59:13-1 et seq. has provided otherwise. Said statute therefore broadens and does not take away remedies; hence there are no constitutional problems as contended by plaintiffs.
There is authority that when a college which was founded by, financed by, and used as an instrumentality of, a state, is sued, it may invoke the defense of sovereign immunity. Oklahoma Agricultural and Mechanical College v. Willis, 6 Okl. 593, 52 P. 921 (Sup. Ct. 1898); Donaldson v. Board of Regents of University Preparatory School, etc., 190 Okl. 269, 122 P.2d 139 (Sup. Ct. 1942). A state legislature, in creating a public corporation to carry out a state purpose, may create it with such powers as it desires, subject only to such limitations as the appropriate Constitution imposes. If the legislature does not grant the public corporation the right to sue or be sued it may not sue or be used.
Understandably, plaintiffs have opposed the position of the Attorney General and have done so on several grounds, not all of which need to be set forth. They have been joined by a representative of Rutgers, the regular counsel for Rutgers, who asked to be heard on this one question. Permission was granted not only because of the importance of the question to Rutgers, but also because the interests of a public university may be different from those of a state and thus need separate representation from the Attorney General. See People v. Barrett, 382 Ill. 321, 46 N.E.2d 951 (Sup. Ct. 1943).
Plaintiffs urge that Rutgers in fact has sued and been sued since 1956. They note the aforementioned cases cited by the Attorney General and point to the fact that Attorney General Kugler did not advance such a contention when he was a defendant. In addition they cite Richardson Engineering Co. v. Rutgers, 51 N.J. 207 (1968); Avins v. Rutgers, The State University, 385 F.2d 151 (3 Cir.1967); Scelfo v. *500 Rutgers, The State University, 116 N.J. Super. 403 (Law Div. 1971).
They further contend that if the New Jersey Contractual Liability Act is applied to these actions based on contracts entered into six years before the law was passed, said law as so construed and applied to these actions would be unconstitutional. The said law affects the measure of damages, which is a substantive right, Romano v. Greenberg, 108 R.I. 132, 273 A.2d 315, 317 (Sup. Ct. 1971); Montgomery Ward & Co. v. Callahan, 127 F.2d 32 (10 Cir.1942); Pyle v. Kansas City Gas and Electric Co., 23 F.R.D. 148 (D. Kan. 1959), and any modification of a remedy which in reality destroys the right is invalid, Wanser v. Atkinson, 43 N.J.L. 571 (Sup. Ct. 1881); Dwyer v. Volmar Trucking Corp., 105 N.J.L. 518 (Sup. Ct. 1929); Fort Lee v. United States, 104 F.2d 275, 282-283 (3 Cir.1939).
Indeed, as part of its motion the Attorney General is moving under N.J.S.A. 59:13-3 to strike alleged claims for consequential damages, damages based upon implied warranties and implied contracts aggregating $7,000,000.
Rutgers, as part of the grounds of its argument, points out that the application of said act to it would deprive it of a jury trial in all contract actions. N.J.S.A. 59:13-4.
The starting point for the answer is N.J.S.A. 18A:65-1 et seq. That law determines the rights and powers of Rutgers. Trustees of Rutgers v. Richman, supra; Rutgers v. Kugler, supra. In the former decision, the court described the 1956 act as creating a "hybrid institution." Prior to the 1956 act, Rutgers was an incorporated college which had express power to sue and be sued.
The charter granted by Governor William Franklin on March 20, 1770 supplemented that granted by George III of England in 1766, and each in relevant part provides:
* * * And we further of our special grace, certain knowledge, and mere motion, for us, our heirs, and successors, will, give, grant, and appoint, that the said trustees and their successors shall for ever hereafter, be in deed, fact, and name, a body corporate, and politick, *501 and that they the said body corporate and politick, shall be known and distinguished in all deeds, grants, bargains, sales, writings, evidences, moniments, or otherwise however, and in all courts for ever hereafter, shall and may sue, and be sued, plead, and be impleaded, by the name of the Trustees of Queen's-College in New Jersey; * * *.
Prior to 1956 Rutgers sued from time to time as its needs required. Trustees of Rutgers College v. Morgan, Comptroller, 70 N.J.L. 460 (Sup. Ct. 1904), aff'd 71 N.J.L. 663 (E. & A. 1905) (suit to collect money from the State of New Jersey for tuition for students admitted on state scholarships).
With this background is there any evidence that the Legislature intended to repeal the power to sue and be sued, and that the trustees consented to a loss of that power in the 1956 act? The courts have recited the care with which the 1956 Act was prepared. Rutgers v. Kugler, supra.
The Report of the Special Committee of the Trustees of Rutgers University, the State University dated November 15, 1955, to the trustees, alumni, faculty and students stated that the proposed law had been thoroughly reviewed by counsel, who are named and are individuals who enjoyed reputations as very competent attorneys. It stated that it is the
* * * opinion of counsel that the above changes in the corporate and organizational structure of the University may be effected with the approval of the Board of Trustees of Rutgers College and the State. To effect these changes, the Charter must be amended and under existing State law, legislative approval is required.
The statement attached to Senate Bill 167 (1956), which became the act of 1956, provides:
The purpose of this Act is to authorize and implement the plan for the reorganization of the Board of Trustees of The Trustees of Rutgers College in New Jersey, the State University, in accordance with the plan conditionally adopted by its Board of Trustees, the outstanding provision of which is the creation of a new Board of Governors, of which a majority will be appointed by the Governor of New Jersey, with the advice and consent of the Senate, and which will have general supervision over and the conduct of the University, *502 with the Board of Trustees continuing in an over-all advisory capacity and with control over certain properties and trusts and the investment of trust funds; to change its name; and the Act otherwise provides for clarification of the relations between the State and the University and of their respective obligations and amends the existing Charter of The Trustees of Rutgers College, as therein set forth, and repeals inconsistent acts. [Emphasis supplied]
It is clear that both the Legislature and the trustees regarded the act of 1956 as an amendment to an existing charter for an incorporated college. In the 1956 act there are two provisions which clearly indicate there was an intent to preserve the then existing corporate powers.
N.J.S.A. 18A:65-2 provides:
The term "the corporation," as used in this chapter, shall mean the said body corporate and politic, incorporated under the name of "the trustees of Queen's-College, in New Jersey," by royal charter dated November 10, 1766 (amended March 20, 1770), confirmed and amended by acts of the legislature of the state of New Jersey adopted June 5, 1781, and May 31, 1799, respectively, and having perpetual succession and existence; its name having been changed to "the trustees of Rutgers college in New Jersey" by act of the legislature adopted November 30, 1825 and to "Rutgers, the state university" pursuant to an act of the legislature, approved June 1, 1956; one of the departments maintained by which is and continues to be the land grant college of New Jersey; the property and educational facilities, rights and privileges of which are and shall continue to be impressed with a public trust for higher education of the people of the state of New Jersey; and which is the instrumentality of the state for the purpose of operating the state university. Nothing herein contained shall impress with such trust any property of the state.
And, N.J.S.A. 18A:65-4 provides:
Nothing herein contained shall be construed to impair, annul or affect any vested rights, grants, charter rights, privileges, exemptions, immunities, powers, prerogatives, franchises or advantages heretofore obtained or enjoyed by the corporation or the university or any constituent unit thereof, under authority of its charter or any act of this state or under any grant, deed, conveyance, transfer, lease, estate, remainder, expectancy, trust, gift, donation, legacy, devise, endowment or fund, all of which are hereby ratified and confirmed except insofar as the same may have expired or have been repealed or altered *503 or may be inconsistent with this chapter or with existing provisions of law; subject, however, thereto and to all of the rights, obligations, relations, conditions, terms, trusts, duties and liabilities to which the same are subject.
N.J.S.A. 18A:65-25 and 26 divide responsibilities between the board of governors and the board of trustees. In N.J.S.A. 18A:65-28 there is recognition that the entity as a corporation has certain powers, for there it is stated:
The boards shall have and exercise the powers, rights and privileges that are incident to their respective responsibilities for the government, conduct and management of the corporation, and the control of its properties and funds, and of the university, and the powers granted to the corporation or the boards or reasonably implied, may be exercised without recourse or reference to any department or agency of the state, except as otherwise expressly provided by this chapter or other applicable statutes. The provisions of sections 11 and 13 of chapter 20 of the Laws of 1944 shall not be deemed or construed to be applicable to the corporation or the university. [Emphasis supplied]
If Rutgers had the corporate power "to sue and be sued" prior to the adoption of the 1956 act, the sections of the Act just cited appear to confirm it and permit the appropriate governing board to use it.
There is no express statement in the 1956 act that the Attorney General has pointed out which repeals the right to sue. In N.J.S.A. 18A:65-27 it is provided that if the State does not provide sufficient funds for the purposes enumerated, the trustees may withdraw the trust assets subject to adjudication of their rights in court. This at least implies a power to sue in the board of trustees.
In 1956 the Legislature was not creating a new college. In creating a new college the Legislature may withhold the power "to sue and be sued." See Oklahoma Agricultural & Mechanical College v. Willis, supra. Compare the powers of the New Jersey College of Medicine and Dentistry, N.J.S.A. 18A:64C-8 (power to sue and be sued), with those of the College of Medicine and Dentistry of New Jersey, N.J.S.A. 18A:64G-6 (no power to sue or be sued).
*504 In 1956 the Legislature was dealing with an existing incorporated college and could not without the trustee's consent take that power away. Prior to the development of the provision of our own national Constitution recognized in Dartmouth College v. Woodward, 4 Wheat. (U.S.) 518, 4 L.Ed. 629 (1819), the English courts held that new statutes imposing new conditions on the charter of an existing incorporated college were not applicable to such a college unless the trustees consented. Rex v. Vice Chancellor of Cambridge University, 3 Burr. 1647, 97 Eng. Rep. 1027 (K.B. 1765). The law of this State is the same. Trustees of Rutgers College in N.J. v. Richman, supra.
The relinquishment of such a power as that "to sue and be used" is not to be assumed in the absence of convincing evidence to the contrary.
The Legislature provided in N.J.S.A. 18A:65-8 that
No provision in this chapter contained shall be deemed or construed to create or constitute a debt, liability, or a loan or pledge of the credit, of the state of New Jersey.
Undoubtedly, this was intended to protect the State's treasury from debts created by Rutgers. There is no evidence that Rutgers ever referred anyone to the Legislature's committee on claims when suit was threatened. There is no evidence that in the 18 years since the 1956 act was passed the Legislature ever contended that Rutgers should refuse to pay disputed claims and send the matter to the Legislature. Until the enactment of the Medical and Dental Education Act of 1970 and the subsequent agreement, there is every indication that the State intended Rutgers to dispose of the claims in this action based on the contracts.
The court is aware that in deciding questions about the meaning of the 1956 act and the relation of Rutgers to the State caution is indicated. Richardson Engineering Co. v. Rutgers, et al, supra 51 N.J. at 215. Even though the State is present here, Rutgers and the State in the context of this *505 case are not the true adversaries  plaintiff contractor and the State are.
Plaintiffs have a direct interest in the question of the power to sue because if Rutgers has that power, then under the exception clause in N.J.S.A. 59:13-1 Rutgers is not subject to that act. The decision of this question will avoid the alternative suggestion of Rutgers that it is not subject to the act because it is not one of the entities described in said act but an "autonomous public university." See Rutgers v. Piluso, 60 N.J. 142 (1972):
The overall result of the legislature contract therefore is an autonomous public university  not merely a contractual relationship or an institution both public and private at the same time. This conclusion is further buttressed by several additional expressions in the act. The institution is specifically designated as "the instrumentality of the state for the purpose of operating the state university," N.J.S.A. 18A:65-2. The public policy of the state is expressly declared to be, indicative of an intent to create a full-fledged state agency, that:
a. The corporation and the university shall be and continue to be given a high degree of self-government and that the government and conduct of the corporation and the university shall be free of partisanship; and
b. resources be and continue to be provided and funds be and continue to be appropriated by the state adequate for the conduct of a state university with high educational standards and to meet the cost of increasing enrollment and the need for proper facilities. (N.J.S.A. 18A:65-27(I)).
Most significantly for present purposes, these governmentally autonomous powers are directed to be exercised "without recourse or reference to any department or agency of the state, except as otherwise expressly provided by this chapter or other applicable statutes." (Emphasis added) N.J.S.A. 18A:65-28. And finally, it is provided that the act,
* * * being deemed and hereby declared necessary for the welfare of the state and the people of New Jersey to provide for the development of public higher education in the state and thereby to increase the efficiency of the public school system of the state, shall be liberally construed to effectuate the purposes and intent thereof. (N.J.S.A. 18A:65-9). [at 157-158; footnote omitted]
Based on the provision of its charter authorizing Rutgers to sue and be sued, the absence of any affirmative evidence *506 of an intent to repeal the right, the confirmation of existing charter power in the 1956 act, and on the history of Rutgers exercise of the power to sue and be sued in the courts after 1956, this court concludes Rutgers had the power to sue and be sued at the time the Contractual Liability Act was enacted and is not subject to said act.
The fact that Rutgers assigned all its rights, duties and obligations to the CMDNJ does not relieve it of its obligation to plaintiffs, Riley v. New Rapids Carpet Center, 61 N.J. 218, 224 (1972) and 3 Williston, Contracts (3 ed. 1960, Jaeger), § 411 at 18 states:
Delegation of Duties. The duties under a contract are not assignable inter vivos in a true sense under any circumstances; that is, one who owes money or is bound to any performance whatever, cannot by any act of his own, or by any act in agreement with any other person, except his creditor, divest himself of the duty and substitute the duty of another. "No one can assign his liabilities under a contract without the consent of the party to whom he is liable." [Footnotes omitted]
The State has not contended that there was a novation between plaintiffs and CMDNJ and there is no evidence before the court of such a novation.
The actions properly are against Rutgers, and N.J.S.A. 59:13-1 does not apply. There is no need to discuss the constitutional questions raised or any problems related to the New Jersey Tort Claims Act, N.J.S.A. 59:1-1 et seq.
The court has also noted that N.J.S.A. 18A:64G-26, which is part of the Medical and Dental Education Act of 1970, provides for the survival of actions then pending against the New Jersey College of Medicine and Dentistry, which was the other medical and dental school receiving state support, but no such provision is made as to actions against the Rutgers Medical School. If the court is correct in its interpretation of the various statutes, the Legislature did not have to make such a provision. The claims automatically survived against the corporate entity of Rutgers; however, other provisions of the aforesaid 1970 act provided for the *507 termination of the corporate entity of the New Jersey College of Medicine and Dentistry and that the new corporate CMDNJ had no power to sue or be sued; hence the need for N.J.S.A. 18A:64G-26. This also explains the reason for the June 1972 agreement between Rutgers and CMDNJ.
Motion denied.