286 N.J. Super. 285 (1996)
669 A.2d 247
WELLS H. KEDDIE AND THE RUTGERS, COUNCIL OF AAUP CHAPTERS, PLAINTIFFS-APPELLANTS/CROSS-RESPONDENTS,
v.
RUTGERS, THE STATE UNIVERSITY, DEFENDANT-RESPONDENT/CROSS-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued December 13, 1995.
Decided January 4, 1996.
*287 Before Judges SHEBELL, WALLACE and NEWMAN.
Denise Reinhardt argued the cause for appellants/cross-respondents (Reinhardt & Schachter, attorneys; Ms. Reinhardt, of counsel, and on the brief; Nancy Macirowski, on the brief).
John J. Peirano argued the cause for respondent/cross-appellant (Carpenter, Bennett & Morrissey, attorneys; Mr. Peirano, of counsel, and on the brief; James P. Lidon, on the brief).
The opinion of the court was delivered by SHEBELL, P.J.A.D.
This appeal is from a judgment of the Law Division in an action in lieu of prerogative writ pursuant to R. 4:69-1. Plaintiffs, Wells H. Keddie ("Keddie") and the Rutgers Council of American Association of University Professors Chapters ("AAUP"), contend that the defendant, Rutgers, The State University ("Rutgers"), denied them both their common law right of access to certain information, and their statutory rights as conferred by N.J.S.A. 47:1A-1 to 4, Right-to-Know Law, by refusing to provide information they requested.
Keddie, a citizen of this State and a professor of Labor Studies at Rutgers, is a former president of Rutgers AAUP. AAUP is an unincorporated association, which represents for purposes of collective negotiation certain faculty members and others employed by Rutgers.
Rutgers "is the instrumentality of the State for the purpose of operating the state university" of the State of New Jersey pursuant to N.J.S.A. 18A:65-1 to 73, the "Rutgers, the state university *288 law." N.J.S.A. 18A:65-2. There are three major campuses of Rutgers, located in Camden, Newark, and New Brunswick. N.J.S.A. 18A:65-9 states:
This chapter, being deemed and hereby declared necessary for the welfare of the state and the people of New Jersey to provide for the development of public higher education in the state and thereby to increase the efficiency of the public school system of the state, shall be liberally construed to effectuate the purposes and intent thereof.
[Emphasis Added.]
Plaintiffs requested "public records" from Rutgers, by letter from Keddie to Rutgers' President, Francis H. Lawrence on September 23, 1992. Keddie requested access to the following documents concerning the expenditure of university monies for legal representation and the nature of that representation, in matters related to labor relations, civil rights claims, and all other employment areas:
1. Bills for legal services (or "attorneys' fees statements");
2. IRS forms 1099 issued to law firms (these have not been pursued any further based upon defendant's assertion that these forms do not exist);
3. Accounting, audits, and other financial analyses of funds expended to pay legal bills, together with attorneys' fees statements ("legal expense information");
4. Submissions by Rutgers to courts, agencies, arbitrators, and other forums and opinions, orders, recommendations and awards issued from such forums; and
5. The identity of any other documents that may contain the information requested.
Keddie's letter, asserting that such documents were public records, maintained:
disclosure is in the best tradition of the public interest, so that the citizens of the State of New Jersey may learn exactly how Rutgers treats and regards its employees. There is no countervailing rule of confidentiality, nor is there any legitimate interest in secrecy.
President Lawrence acknowledged receipt of Keddie's letter, and informed him that the matter had been referred to Rutgers' legal counsel.
Thereafter, University Counsel denied the entire request. By letter dated October 16, 1992, University Counsel asserted that the documents requested were either (a) available otherwise without Rutgers having to forward them; (b) public records but not *289 required to be disclosed; or (c) privileged information which was not otherwise required to be disclosed.
On November 30, 1992, plaintiffs filed their complaint seeking access to public records held by Rutgers, pursuant to N.J.S.A. 47:1A-2, and the common law. Rutgers filed an answer on February 2, 1993, denying that it was subject to the Right-to-Know Law or common law disclosure of public records. On April 14, 1993, the parties submitted a joint pretrial memorandum that stipulated the facts and set forth their respective legal and factual contentions. A pretrial order was entered April 16, 1993.
Extensive discovery followed. In response to an interrogatory, Rutgers provided plaintiffs with a list of all employment related docketed matters which it has been involved in for the last five years. Also in discovery, Rutgers' procedures for maintaining legal expenses information were revealed, as follows: At University Counsel's request, outside attorneys submit their bills for legal services monthly; the bills are reviewed by University Counsel, and forwarded to the controller's office for payment. The controller's accounts payable unit prepares a "bill head" setting forth the name and address of the law firm, due date, date and amount of the bill. The bill head, with the original outside attorney's bill attached, is forwarded then for approval by an university accountant. After review, it is returned to accounts payable and the bill data is entered into an "accounts payable" database, maintained on microfiche for at least 7 years. The paid legal bills are themselves archived and kept in a "D.E. room" for seven years. Additionally, University Counsel maintains copies of the bills for two years. The university accountant, also, prepares a bi-annual summary of legal expenses for University Counsel. This contains the dollar amounts paid to particular law firms for legal expenses and brief descriptions of the type of payment.
After conducting discovery, the parties cross-moved for summary judgment. Plaintiffs in their motion sought access to documents related to the expenditure of university funds for legal representation in matters related to labor relations, civil rights *290 claims, and other employment related areas, specifically to include, access to bill heads, attorney bills, data collected about attorneys' fees for labor and employment matters, and compilations of attorneys' fees paid under authority of University Counsel. Plaintiff also sought all pleadings, briefs, affidavits, and other filings made with courts, agencies and arbitral forums; and an award of costs and fees.
Rutgers, in its cross-motion, argued that it is not subject to the Right-to-Know Law and that plaintiffs presented no genuine issue of material fact. The motions were heard on January 26, 1994. The Law Division judge held:
(1) that defendant is covered by the provisions of the New Jersey Right to Know Act, (the "Act") N.J.S.A. 47:1A-1, et seq.;
(2) that none of the documents to which plaintiffs seek access are public records as defined in the Act;
(3) that the attorneys' fee statements sought by plaintiffs are not common law public records;
(4) that the remainder of the documents sought by plaintiffs are public records within the common law definition; and
(5) that the public interests in nondisclosure manifestly outweigh the plaintiffs' interest in access to the requested common law public records.
On March 31, 1994, an order embodying the judge's decision was entered. It required that Rutgers supply plaintiffs periodically with a list of ongoing labor and employment cases, pending in any tribunal, in which defendant is a party by virtue of its status as an employer, including name, docket number, place of venue and the date the complaint was received by defendant. The judge further ordered that defendant give notice to plaintiffs periodically of employment cases it is involved in after the date of the Order.
On appeal, plaintiffs challenge the trial court's rulings numbered above as 2, 3, and 5, and Rutgers challenges rulings numbered 1 and 4. Additionally, Rutgers challenges that portion of the order requiring it to keep plaintiffs informed of all legal matters which arise, their docket numbers, and places of venue.
The New Jersey Right-to-Know Law states in pertinent part that:

*291 Except as otherwise provided, ..., all records which are required by law to be made, maintained or kept on file by any board, body, agency, department, commission or official of the State or of any political subdivision thereof or by any public board, body, commission or authority created pursuant to law by the State or any of its political subdivisions, or by any official acting for or on behalf thereof (each of which is hereinafter referred to as the "custodian" thereof) shall, for the purposes of this act, be deemed to be public records. Every citizen of this State, during the regular business hours maintained by the custodian of any such records, shall have the right to inspect such records. Every citizen of this State shall also have the right, during such regular business hours and under the supervision of a representative of the custodian, to copy such records ...
[N.J.S.A. 47:1A-2.]
Rutgers argues that it is an "instrumentality" of the State, and not an entity that is subject to the Act. It points to N.J.S.A. 18A:65-2, wherein Rutgers is referred to as the "instrumentality of the state for the purpose of operating the state university." [Emphasis Added]. Rutgers argues that "[b]ecause the term `instrumentality' is not listed in N.J.S.A. 47:1A-2 among the entities covered by the Act, its plain language, therefore, indicates that instrumentalities are not covered." See Cohen v. UMDNJ, 240 N.J. Super. 188, 195, 572 A.2d 1191 (Ch.Div. 1989). Moreover, argues Rutgers, "coverage of the University under the Act would be flatly inconsistent with the Legislature's expressed intention to maintain the University's independent character."
Rutgers was not always the State University, but had enjoyed the status of a private, non-profit educational corporation, despite the fact that it was the land grant college of New Jersey. Rutgers v. Piluso, 60 N.J. 142, 155, 286 A.2d 697 (1972). However, by 1956, the status of Rutgers had evolved to that of a hybrid public body, classified as a "body corporate and politic," with some, limited, private functions and control. See N.J.S.A. 18A:65-1 and 10; see also Rutgers v. Piluso, supra, 60 N.J. at 155-56, 286 A.2d 697.
The 1956 act structured a complex conglomeration of public and private assets, governed by a "Board of Governors," with the majority of its members State appointed, having full authority and control over the conduct and operation of the university, with a "Board of Trustees" controlling certain pre-1956 assets, as well as *292 private gifts and funding received thereafter. Piluso, supra, 60 N.J. at 155-56, 286 A.2d 697; see N.J.S.A. 18A:65-25 and 26; see also Trustees of Rutgers College in New Jersey v. Richman, 41 N.J. Super. 259, 125 A.2d 10 (Ch.Div. 1956) (citing a full history of Rutgers since its inception in the 18th century). The Piluso court observed:
The overall result of the legislative contract therefore is an autonomous public university  not merely a contractual relationship or an institution both public and private at the same time.
[60 N.J. at 157, 286 A.2d 697.]
Thus, Rutgers has been regarded as a State body for purposes of immunity from local land-use regulation, Piluso, supra, 60 N.J. at 158-59, 286 A.2d 697, and has been held immune from property taxation. Rutgers v. Piscataway Township, 1 N.J. Tax. 164 (Tax. Ct. 1980). Rutgers is also subject to the Public Employer-Employee Relations Act. Rutgers v. Council of AAUP Chapters, 256 N.J. Super. 104, 606 A.2d 822 (App.Div. 1991), aff'd 131 N.J. 118, 618 A.2d 853 (1992).
Further, Rutgers' Board of Governors complies with the requirements of the Open Public Meetings Act ("Sunshine Law"), N.J.S.A. 10:4-6 to 21, even in the absence of any court having so ordered. [Procedures for Board of Governors Meetings, effective September 15, 1993]. The Sunshine Law, states that:
Except as [otherwise provided], no public body shall hold a meeting unless adequate notice thereof has been provided to the public.
[N.J.S.A. 10:4-9.]
The term "public body" is defined for purposes of the Sunshine Law as:
a commission, authority, board, council, committee or any other group of two or more persons organized under the laws of this State, and collectively empowered as a voting body to perform a public governmental function affecting the rights, duties, obligations, privileges, benefits, or other legal relations of any person, or collectively authorized to spend public funds including the Legislature, but does not mean or include the judicial branch of the government, any grand or petit jury, any parole board or any agency or body acting in a parole capacity . ..
[N.J.S.A. 10:4-8.a.]
Noteworthy, is the fact that the term "instrumentality" is not present in the definition of "public body."
*293 Its unique character had made Rutgers a state body for some purposes, while being considered autonomous for others. See In re Exec. Com'n on Ethical Stand., 116 N.J. 216, 223-24, 561 A.2d 542 (1989). The University is capable of being sued and has the power to sue, and thus, is not considered part of the State in regard to the New Jersey Contract Liability Law. N.J.S.A. 59:13-1 to 10; Frank Briscoe v. Rutgers, 130 N.J. Super. 493, 327 A.2d 687 (Law Div. 1974). Rutgers is not considered an arm of the State within the meaning of the Eleventh Amendment's suit immunity. Kovats v. Rutgers, 822 F.2d 1303 (3d Cir.1987), aff'd sub. nom Rutgers Council of AAUP v. Bloustein, 860 F.2d 1075 (1988); cert. den. 489 U.S. 1014, 109 S.Ct. 1126, 103 L.Ed.2d 188 (1989). Nor is it considered an alter-ego of the State for purposes of civil rights legislation, but rather is a "person" subject to action under 42 U.S.C.A. § 1983. Fuchilla v. Layman, 109 N.J. 319, 537 A.2d 652, cert. denied, 488 U.S. 826, 109 S.Ct. 75, 102 L.Ed.2d 51 (1988). Further, its faculty are not considered employees of the State for purposes of conflict of interest laws. In re Exec. Com'n., supra, 116 N.J. at 227, 561 A.2d 542.
Therefore, it appears that whether or not a particular law is applicable to Rutgers depends upon a consideration of both the laws' general purpose, as well as the purposes of the Rutgers law. In re Exec. Com'n., supra, 116 N.J. at 221, 561 A.2d 542. The general purpose of the Right-to-Know Law is to ensure that public records "be readily accessible for examination, by the citizens of this State, with certain exceptions, for the protection of the public interest." N.J.S.A. 47:1A-1. The Rutgers law states that its purpose is to continue the "public trust for higher education of the people of the state of New Jersey," serving as the "instrumentality of the state for purposes of operating the state university." N.J.S.A. 18A:65-2.
The trial court in rejecting Rutgers' arguments, stated:
I think that you can't reasonably argue that just because the word instrumentality was used to describe Rutgers in another statute and that word is not present here does not mean that Rutgers is not or should not be subject to this statute. The definition of entities subject to the statute in N.J.S.A. 47:1A-2 is broad enough to *294 encompass Rutgers and I find and hold that Rutgers University is within the scope of the New Jersey Right to Know.
Rutgers notes that Temple University, which is defined by a statute similar to Rutgers', is not covered by the Pennsylvania Right-to-Know Law. Temple University has been held not to be an agency of the State of Pennsylvania, and not so in relation to that act. Mooney v. Bd. of Trustees of Temple Univ., 448 Pa. 424, 292 A.2d 395 (1972). However, we perceive that the Pennsylvania statute is not as broad as ours. 65 P.S. § 66.2. While our statute refers to various different entities which are covered, the Pennsylvania statute merely uses the term "agency." Ibid. Rutgers clearly can fall within several of the categories other than "agency" enumerated in N.J.S.A. 47:1A-2.
Any possible exceptions to coverage under the Right-to-Know Act should be narrowly construed. South Jersey Pub. Co., Inc. v. N.J. Expressway Auth., 124 N.J. 478, 496, 591 A.2d 921 (1991). We are satisfied that for purposes of the Right-To-Know Law, Rutgers is a public body, and its Board of Governors is a "public board ... created pursuant to law by the State." See N.J.S.A. 47:1A-2. We do not believe that this conclusion will interfere with the independence of the academic institution that the Legislature sought to preserve in enacting the Rutgers law anymore than compliance with the Sunshine Law has so interfered. Rather, an open disclosure policy under both the Right-To-Know Law and the Sunshine Law would appear to be a proper and much sought after goal of the academic community of such an institution.
Records which are subject to the Right-to-Know Law would include those that are required to be made, maintained or kept on file by Rutgers. N.J.S.A. 47:1A-2. Plaintiffs seek three specific types of documents:
(1) Attorneys' fees statements with regard to matters involving labor and employment;
(2) Rutgers' internally generated payment information:
(a) "Billheads" or "vouchers" authorizing payment of the bills;

*295 (b) the semi-annual summary of legal expenses generated by the controller's office which contains information regarding all open vendor (i.e., law firm) accounts;
(c) the actual accounts payable database kept by the university accountant;
(3) Submissions to and rulings from courts, agencies and arbitrations in all matters concerning labor and employment which Rutgers has been a party to for the last five years.
Plaintiffs point to the language contained in N.J.S.A. 18A:65-25(d), that "[a]ll accounts of the university shall be subject to audit by the State at any time." Plaintiffs maintain that this provision requires the Board of Governors to be prepared for audits of all its accounts at any time, and that it must, therefore, maintain records of monies paid for specific accounts.
If a document is a Right-to-Know public record, then New Jersey citizens have the right to inspect it. Techniscan v. Passaic Valley Water, 113 N.J. 233, 236, 549 A.2d 1249 (1988); McClain v. College Hosp., 99 N.J. 346, 354, 492 A.2d 991 (1985). The Right-to-Know Law has no standing requirement other than citizenship of the State and there is no need to make a showing of interest to exercise rights under the Right-to-Know Law. Higg-A-Rella, Inc. v. County of Essex, 141 N.J. 35, 43, 660 A.2d 1163 (1995).
The definition of a public record for purposes of the Right-to-Know Law is, however, narrower than the common law definition. Ibid. A Right-to-Know public record is one that is "required by law to be made, maintained or kept on file by any" agency or body of the State or any of its subdivisions. Ibid., (citing Atlantic City Convention Center Auth. v. South Jersey Publishing Co., Inc., 135 N.J. 53, 637 A.2d 1261 (1994)). Our Supreme Court has stated clearly its inability to approve of any expansion of the plain wording of the definition of public record under the Act. Nero v. Hyland, 76 N.J. 213, 221, 386 A.2d 846 (1978).
In Atlantic City Convention Center, supra, 135 N.J. at 64-65, 637 A.2d 1261, the Court held that while meeting minutes were statutory public records required to be made and maintained, the audio taped recordings of those same meetings were not public *296 records, and were not subject to disclosure under the Right-to-Know Law. See also North Jersey Newspapers Co. v. Passaic County Bd. of Chosen Freeholders, 127 N.J. 9, 601 A.2d 693 (1992) (elected body's phone bills not Right-to-Know records as not required to keep records of parties called); South Jersey Publishing Co., Inc. v. New Jersey Expressway Auth., supra, 124 N.J. 478, 591 A.2d 921 (memo of understanding from executive meeting about employee's termination not Right-to-Know document as not required to be kept); Nero v. Hyland, supra, 76 N.J. 213, 386 A.2d 846 (character investigations ordered by governor in contemplation of nomination not Right-to-Know documents as not required to be made, maintained, or kept).
We have held that data pertaining to the aggregate amount of health benefits paid to a local school board's employees under the State health benefits plan was available as "public records" under the Right-to-Know Law, because the information reflecting the fiscal transaction, kept under a computerized record-keeping system, was necessary in order for the State Health Benefits Commission to prepare its annual report as required by N.J.S.A. 52:14-17.27. Bd. of Ed. of Newark v. N.J. Dept. of Treasury, 279 N.J. Super. 489, 500, 653 A.2d 589 (App.Div.), leave to appeal granted 142 N.J. 440, 663 A.2d 1351 (1995). We stated:
It cannot seriously be argued that the Commission can prepare such an annual report without a compilation of the aggregate premium payments made by each participating employee as well as the corresponding aggregate claim payments made by the Commission through its administrators to participating employees. Thus, the raw data must be made, maintained or kept on file by the Commission or its administrators.
[Id. at 500, 653 A.2d 589.]
We further observed that "[b]ecause the Commission and its administrators choose, for purposes of administrative expediency, to computerize the raw data, does not make the data any less a public record." Id. at 501, 653 A.2d 589; see Asbury Park Press, Inc. v. State of N.J., Dept. of Health, 233 N.J. Super. 375, 558 A.2d 1363 (App.Div.), certif. denied, 117 N.J. 646, 569 A.2d 1344 (1989) (spread sheet prepared by a hired consultant held not to be a statutory public record, but underlying data used to prepare spreadsheet was public record).
*297 Rutgers argues that no specific accounts, and no specific records are required by N.J.S.A. 18A:65-25(d) to be made, maintained, or kept on file. However, it would not appear that Rutgers can realistically be prepared for an "audit by the State at any time" without maintaining such records. See Bd. of Ed. of Newark, supra, 279 N.J. Super. at 500, 653 A.2d 589. Such a situation would render the audit valueless and, therefore, be contrary to good accounting and audit practice.
In light of the statutory requirement that Rutgers must have its accounts available for audit at any time, we conclude that the underlying billing documents are public records under the Right-to-Know Law. It appears that the bi-annual summaries of legal expenses and the accounts payable databases contain the very same information as the bill heads and payment vouchers. Out of concern for any possibility of the latter containing information that might be the subject of attorney-client confidentiality, as well as the cost of producing the documents, it may be appropriate that only the summaries and accounts information be disclosed, to avoid duplication. Such a means would avoid the need for in camera review to protect confidentiality. We, therefore, remand to the Law Division for consideration of this less intrusive alternative.
We also reverse the order of the Law Division that Rutgers provide periodic updates of matters that it is involved in, the decisions in those matters when final, and other relevant information regarding docket number, venue, and the like. This was intended by the judge as a less intrusive means of providing plaintiffs with the information sought under category 3 of plaintiffs' request. By ordering Rutgers to turn over the limited identification information, the trial judge relieved Rutgers "of the obligation of supplying all of the pleadings directly." [Emphasis Added]. We do not agree that Rutgers has such an underlying "obligation" in these circumstances. The documents that plaintiffs seek are documents already on file at the various clerks' offices of the courts or tribunals involved.
*298 We find no mandate that a public body provide documents to a citizen, where that citizen already has a direct and readily available means of access to those documents. In addition, our Supreme Court has held that neither the common law, nor the Right-to-Know Law, imposes a duty upon public officials to produce new records or summaries of public records. Southern N.J. Newspapers, Inc. v. Twp. of Mt. Laurel, 141 N.J. 56, 69, 660 A.2d 1173 (1995). Indeed, what the order below requires would mandate Rutgers to function as a recording service for labor and employment litigation. The Right-To-Know Law never contemplated such an obligation for a public body to perform.
Because of the above dispositions, we need not discuss the plaintiffs' common-law right to inspect the documents. See South Jersey Pub. v. N.J. Expressway, supra, 124 N.J. at 487-88, 591 A.2d 921; Techniscan v. Passaic Valley Water, supra, 113 N.J. at 236-37, 549 A.2d 1249; Shuttleworth v. City of Camden, 258 N.J. Super. 573, 582, 610 A.2d 903 (App.Div. 1992). We reverse and remand for further proceedings and entry of an appropriate order in keeping with this opinion and N.J.S.A. 47:1A-2.
Reversed and remanded.