170 N.J. Super. 506 (1979)
406 A.2d 1344
ROBERT E. SINDERBRAND, PLAINTIFF,
v.
ALFRED J. SCHUSTER AND ROBERT WEIR, DEFENDANTS.
Superior Court of New Jersey, Law Division Atlantic County.
Decided October 11, 1979.
*508 Mr. Harold A. Schuman for plaintiff (Messrs. Haines, Schuman & Butz, attorneys; Mr. Daniel Sugrue on the brief).
Mr. Thomas F. Marshall, Deputy Attorney General, for defendants (Mr. John J. Degnan, Attorney General of New Jersey, attorney).
FRANCIS, A.J.S.C.
Defendants in this defamation suit move to have venue changed from Atlantic to Mercer County. The court agrees with the contentions raised by defendants in support of their motion, and it will order that venue be changed to Mercer County.
This matter is an outgrowth of an earlier criminal prosecution. Dr. Robert Sinderbrand, plaintiff in the present action, was acquitted in December 1978 of charges that he illegally prescribed drugs to two State Police undercover agents. At the same time he pleaded guilty to a charge of failing to make, keep and furnish records and information as required by law. N.J.S.A. 24:21-1 et seq. These allegations of wrongdoing were also the subject of a proceeding before the New Jersey Board of Medical Examiners to determine whether plaintiff's medical license should be suspended or revoked. It appears that a final determination of this issue has not yet been made by the Board.
Dr. Sinderbrand's complaint avers that defendants "falsely and maliciously caused to be written and published" harmful statements about him which appeared in the April 21, 1978 issue of the Atlantic City Press. The alleged defamatory statement made by defendant Alfred J. Schuster, who at that time was the Executive Secretary of the Board of Medical Examiners, consisted of the remark: "A doctor can't be a drug pusher." The other statement complained of was made by defendant Robert Weir, who was then a New Jersey Deputy Attorney General. The Press reported that Weir stated: "I've always said we were dealing with a fringe group within the medical profession, but *509 it's a group that can cause a serious problem when they dispense drugs illegally."
The first ground offered by defendants in support of their motion for change of venue is that R. 4:3-2(a)(2) requires that venue in this action be laid in Mercer County. That provision requires that in actions "not affecting real property which are brought by or against municipal corporations, counties, public agencies or officials," venue shall be laid "in the county in which the cause of action arose." The movants assert that this provision is applicable because they were public officials acting in their official capacities at the time that the alleged tortious conduct occurred. They argue that venue must be laid in Mercer County because any statements made by them to the Press were made from their Mercer County offices, and therefore, the cause of action arose in Mercer County.
The court holds that R. 4:3-2(a)(2) does require that this suit be heard in Mercer County. Plaintiff does not allege that defendants were acting other than in their official capacities when they made the statements complained of, and the court is satisfied that these statements were made in the scope of the defendants' employment as public officials. The duties of a Deputy Attorney General include the enforcement of the State's drug laws, N.J.S.A. 52:17B-107, 52:17A-4, 52:17A-6, and this was one of the responsibilities assigned to defendant Weir at the time in question. In addition, the Board of Medical Examiners is by statute empowered to initiate investigations of medical doctors, N.J.S.A. 45:1-18, and may suspend or revoke a doctor's license. N.J.S.A. 45:9-16, 45:1-21.
While the statutes governing the duties of these officials do not specifically designate communication with the media as one of their functions, it is increasingly recognized that if this communication pertains to matters which are within the scope of an official's responsibilities, such statements should be regarded as being within the "outer perimeter" of the officials' *510 "line of duty." Barr v. Matteo, 360 U.S. 564, 574-575, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959); See Economou v. U.S. Dept. of Agriculture, 535 F.2d 688 (2nd Cir.1976); Margoles v. Wis. State Bd. of Medical Examiners, 446 F. Supp. 959 (W.D.Wis. 1978). Cf. N.J.S.A. 10:4-6. In Margoles, a case factually similar to the one at hand, members of the Wisconsin Board of Medical Examiners were sued for making alleged defamatory statements to newspaper reporters which pertained to the plaintiff's fitness to practice medicine in that state. The court indicated that it did not disagree with the view that "the allegations against (the defendants) charge things done or said in their respective official capacities." 446 F. Supp. at 962.
In the present case, there is nothing in the record which indicates that personal rather than professional considerations motivated the defendants to make the statements at issue. There is no hint that "personal animus" was a factor behind the making of the statements. Van Horn v. Trenton, 80 N.J. 528, 537 (1979). The remarks were apparently made by phone in the defendants' offices in response to calls placed by the Atlantic City Press. The Press sought the defendants' views precisely because they were public officials. The record shows that the statements were made in furtherance of defendants' official duties, and not merely in furtherance of their own purposes, and were thus within the scope of the defendants' employment. Cucci v. Jaldini, 141 N.J. Super. 297, 300-301 (App.Div. 1976). See Gilborges v. Wallace, 78 N.J. 342, 351 (1978).
The plaintiff asserts that R. 4:3-2(a)(2) does not apply here because the defendants have been sued in their individual rather than in their official capacities. The plaintiff cites for this proposition Rabin v. Pollit, 11 N.J. Super. 127 (Law Div. 1950). In Rabin, the plaintiff sued a mayor and councilman for making alleged slanderous statements about him at public meetings. The court ruled that the forerunner to present R. 4:3-2(a)(2) did *511 not apply because the defendants were sued in their individual capacities, and not as public officials. Id., at 128.
The Rabin opinion contains little discussion of the factual setting in which the alleged defamatory statements were made. The opinion does not make clear whether the defendants were acting in their official capacities or as individuals when their statements were made. Thus, the exact holding of Rabin is difficult to ascertain.
Even if Rabin is read as holding that in a suit brought against public officials for acts committed within scope of their duties, venue may be laid in a county other than that in which the cause of action arose merely because such officials are sued in their individual rather than in their official capacities, we would decline to follow it. More recent decisions have indicated that the convenience of public bodies and officials is to be heavily weighed when questions regarding venue are at issue. Engel v. Gosper, 71 N.J. Super. 573, 581-582 (Law Div. 1962). See Nugent v. Sagner, 151 N.J. Super. 189 (App.Div. 1977). The public interest would not be well served if the duties of public officials were disrupted or left unattended while they were forced to defend actions brought against them in distant counties which have little or no connection with the conduct that forms the basis of the suit. This consideration would not be furthered if R. 4:3-2(a)(2) could be easily circumvented by suing a public official as an individual, rather than as a public official, although the conduct complained of was performed in the defendant's official capacity.
The court also agrees with the second ground advanced by defendants for a change of venue. Defendants assert that they cannot obtain a fair trial in Atlantic County because of the extensive pretrial publicity which surrounded the Sinderbrand prosecution. R. 4:3-3(a)(2) allows the Assignment Judge to change venue in a civil action if he determines that "there is a substantial doubt that a fair and impartial trial can be had in the county where venue is laid". It is established that motions *512 to change venue were addressed to the sound discretion of the court. State v. Wise, 19 N.J. 59, 73 (1955); State v. Collins, 2 N.J. 406, 411 (1949).
A court is ordinarily reluctant to change venue on grounds that there is doubt that a fair trial can be had because in most cases the interrogation of prospective jurors is sufficient to insure that an unbiased jury is chosen. State v. Collins, 2 N.J. at 412. Although there are no reported decisions in which R. 4:3-3(a)(2) has been successfully invoked to change venue, courts in other states have employed similar provisions to grant a change of venue in a civil suit where it appeared that the existence of local prejudice made it unlikely that a fair trial could be held in the county where venue was originally laid. Berberian v. Town of Westerly, R.I., 381 A.2d 1039 (1978); Castle v. Village of Baudette, 267 Minn. 140, 125 N.W.2d 416, 417 (1963); Althiser v. Richmondville Creamery Co. Inc., 27 Misc.2d 456, 215 N.Y.S.2d 324 aff. 13 App.Div. 162, 215 N.Y.S.2d 122 (1961); Berry v. North Pine Elec. Co-op Inc., 235 Minn. 562, 50 N.W.2d 117 (1952); Olson v. City of Sioux Falls, 63 S.D. 563, 262 N.W. 85 (1935).
The nature and extent of the publicity surrounding the Sinderbrand criminal prosecution went far beyond that which normally accompanies a criminal prosecution. The publicity was overwhelmingly favorable to Dr. Sinderbrand, and intensely critical of the actions and motives of the State Attorney General's Office for its role in the investigation and prosecution.
Although it is not necessary to detail all of the publicity surrounding the Sinderbrand prosecution, several items bear mention. The Atlantic City Press which, circulates widely in Atlantic County, covered the subject of Dr. Sinderbrand's legal difficulties quite extensively. On October 7, 1978, the Press carried a page one article entitled "Town Wants Doc to Fight." On May 17, 1978, it printed a page one article entitled, "Doctor Fights Drug Charge." These and other articles published in the Press focused on the supposedly dedicated nature of the doctor *513 and the deceitful campaign waged against him by the State Attorney General's Office. Even syndicated columnist Jack Anderson joined the chorus, and on December 9, 1978, the Press carried an article written by Anderson entitled "Computer Narcs May Ruin Dedicated Jersey Doctor."
Perhaps most illustrative of the nature of the publicity afforded Dr. Sinderbrand is an editorial appearing in the December 17, 1978 edition of the Sunday Press. The editorial was entitled, "The Sinderbrand Case Stinks," and it opens by stating: "Dr. Sinderbrand is a broken man. His health has been ruined. His life savings have been wiped out. He faces legal fees of $50,000. Why? Because some misguided individuals in the State Attorney General's Office decided to entrap him."
Besides the Atlantic City Press, articles of a similar nature also appeared in the Philadelphia Bulletin, which has a sizeable circulation in Atlantic County. In addition, on November 9, 1978 WCAU TV 10, a Philadelphia television station viewed in Southern New Jersey, carried a sympathetic report which focused on the financial hardship faced by Dr. Sinderbrand because of his legal problems.
The magnitude and onesided quality of this publicity make it doubtful that defendants can now obtain a fair trial in Atlantic County. The existence of a pervasive bias in favor of plaintiff is further indicated by the fact that the State Attorney General's Office received almost five hundred letters from citizens in Atlantic County expressing their support for the doctor. All of these letters were identically worded and were received on May 6, 1977. They contain return addresses not only from Egg Harbor City, where Dr. Sinderbrand resides, but from many other Atlantic County communities as well.
Finally, the difference between this court's present ruling that venue should be changed because of the substantial doubt that a fair trial can be held in Atlantic County, and the court's earlier decision denying the State's motion for the empaneling of a foreign jury in the Sinderbrand criminal prosecution should be *514 explained. In denying the State's motion for an empaneling of a foreign jury in the Sinderbrand criminal prosecution, the court was guided by its belief that in the absence of "clear and convincing" proof that a fair trial could not be had, a criminal defendant should not be deprived of the opportunity of being tried before a jury composed of members who reside in the same area as the defendant, where the alleged crime was committed in that county. In the present case, it is the defendants who seek a change of venue. They obviously did not initiate this suit, and are in court only because they are forced to protect their interests. In light of the substantial evidence indicating that the defendants will not be able to obtain a fair trial in Atlantic County, considerations of fairness now militate in favor of changing venue.
The attorney for the defendants will draw the necessary order.