750 A.2d 68

SEYMOUR H. FINE, PLAINTIFF, v. RUTGERS, THE STATE UNIVERSITY OF NEW JERSEY, DEFENDANT–APPELLANT.

Argued February 15, 2000—Decided April 13, 2000.

*Aron M. Schwartz,* argued the cause for appellant (*Greenbaum, Rowe, Smith, Ravin, Davis & Himmel,* attorneys).

STEIN, J.

This interlocutory appeal requires us to decide whether defendant Rutgers, the State University of New Jersey, is a public agency for purposes of *Rule* 4:3–2(a). In pertinent part that Rule requires that actions not affecting real property instituted by or against "public agencies" be brought in the county in which the cause of action arose. Plaintiff Seymour H. Fine ("Fine"), an associate professor at the Rutgers–Newark campus, instituted this action against Rutgers in the Superior Court, Law Division, Bergen County alleging breach of contract and age discrimination. Relying on *Rule* 4:3–2(a), Rutgers filed a motion to change venue from Bergen to Essex County, the county in which the facts pertinent to the litigation occurred. The Law Division denied that motion, holding that Rutgers is not a public agency for purposes of the venue Rule. The court concluded that "case law clearly supports the position that Rutgers is not considered part of the State for purposes of contractual and discrimination matters." The Appellate Division denied Rutgers' motion for leave to appeal. We granted Rutgers' motion for leave to appeal and now reverse.[1]

---

[1] Fine did not appear or participate in the proceedings before this Court.

I

Rutgers hired Fine in September 1977 and promoted him to associate professor in 1981. Fine sought promotion to the rank of professor many times between 1986 and 1994. Each time the evaluation committee determined that Fine's application did not warrant promotion to professor. After the rejection of one such application, Fine filed a grievance. The Grievance Committee remanded his application to a different review committee. That committee ultimately denied his application. Fine then appealed to the Faculty Appeals Board, and that appeal was denied in March 1995. Fine worked at the Rutgers–Newark campus in Essex County during his entire period of employment.

In June 1997, Fine filed a complaint against Rutgers in the Superior Court, Law Division, Bergen County. That complaint alleged that Rutgers' faculty promotion procedures violated Fine's due process rights and breached a collective bargaining agreement. The complaint also alleged that Rutgers illegally considered Fine's age in denying Fine's application for promotion.

Rutgers removed the case to the United States District Court for the District of New Jersey. That court granted summary judgment to Rutgers on Fine's federal age discrimination claim because the complaint was untimely. The court remanded the remainder of the complaint to the Law Division, Bergen County.

In December 1998 Rutgers moved to change venue from Bergen to Essex County. In support of that motion, Rutgers submitted a certification describing three prior employment-related suits brought against Rutgers in which Rutgers successfully changed venue to the county of the plaintiff's employment. Rutgers also noted that "[p]laintiff ... worked at the University's Newark campus. That is where most of the potential witnesses in this case are employed and where most of the relevant records and documents pertaining to plaintiff's employment at the University are maintained."

The Law Division recognized that "the convenience of public bodies and officials is to be given great weight when questions regarding venue arise." However, the court relied on *Frank Briscoe Co., Inc. v. Rutgers*, 130 *N.J.Super.* 493, 506, 327 *A.2d* 687 (Law Div.1974), a case in which Rutgers was held not to constitute a state entity for purposes of the New Jersey Contractual Liability Act, *N.J.S.A.* 59:13–1 to –10, and *Fuchilla v. Layman*, 109 *N.J.* 319, 330, 537 *A.2d* 652 (1988), a case in which the University of Medicine and Dentistry of New Jersey was held not to be the *alter ego* of the State for Eleventh Amendment purposes, in an employment discrimination suit filed pursuant to 42 *U.S.C.A.* § 1983. The court held that *Rule* 4:3–2(a) was inapplicable because Rutgers should not be considered a public agency in cases involving contractual and employment discrimination matters.

## II

Originally, Rutgers functioned as a private institution although it operated with "substantial governmental financial connections since it became the state's land grant college in 1864." *Rutgers v. Piluso*, 60 *N.J.* 142, 155, 286 *A.2d* 697 (1972); *see also Trustees of Rutgers College in N.J. v. Richman*, 41 *N.J.Super.* 259, 265–75, 125 *A.2d* 10 (Ch.Div.1956) (providing detailed history of Rutgers). In 1945 the Legislature enacted a statute authorizing the provision of educational services between Rutgers' Board of Trustees and the State that was a "purely contractual arrangement." *Piluso, supra,* 60 *N.J.* at 155, 286 *A.2d* 697. That statute allowed the State to buy collegiate educational services from Rutgers in return for annual appropriations to Rutgers from the Legislature. *Ibid.*

In 1956 the Legislature created "an entirely different kind of entity and arrangement" when it enacted the "Rutgers, the state university law." *Id.* at 154–55, 286 *A.2d* 697; *N.J.S.A.* 18A:65–1 to –73 (the Rutgers Law). The Rutgers Law defined the university as an "instrumentality of the state for the purpose of operating the state university." *N.J.S.A.* 18A:65–2. The Rutgers Law's provisions were to be "liberally construed to effectuate the pur-

poses and intent thereof." *N.J.S.A.* 18A:65–9. Since the Rutgers Law's enactment, Rutgers has been described as "a hybrid institution—at one and the same time private and public, with the State being granted a major voice in management, and the designation 'State University'; and the institution being granted private autonomy and control of physical properties and assets." *Trustees of Rutgers College, supra,* 41 *N.J.Super.* at 289–90, 125 *A.*2d 10.

In *Piluso, supra,* the Court noted:

*The public policy of the state is expressly declared to be, indicative of an intent to create a full-fledged state agency,* that:

> a. The corporation and the university shall be and continue to be given a high degree of self-government and that the government and conduct of the corporation and the university shall be free of partisanship; and

> b. resources be and continue to be provided and funds be and continue to be appropriated by the state adequate for the conduct of a state university with high educational standards and to meet the cost of increasing enrollment and the need for proper facilities.

[60 *N.J.* at 157–58, 286 *A.*2d 697 (quoting *N.J.S.A.* 18A:65–27I)(emphasis added).]

The Court determined that Rutgers "as a public university for the benefit of all the people of the state, was ... a statewide facility entitled to the same protection from local enactments as the turnpike and the parkway, so long as it does not act unreasonably or arbitrarily." *Id.* at 158, 286 *A.*2d 697.

Rutgers is considered a public agency for purposes of other statutes. For example, the Tort Claims Act provides:

The definition of "Public Entity" provided in this section is intended to be all inclusive and to apply uniformly throughout the State of New Jersey to all entities exercising governmental functions.... For the purposes of establishing liability in the State of New Jersey this definition is specifically intended to include such entities as the New Jersey Highway Authority and Turnpike Authority and Rutgers the State University.

[*N.J.S.A.* 59:1–3, cmt.]

Similarly, records of Rutgers' expenditures for outside legal counsel were held to be public common-law records in *Keddie v. Rutgers,* 148 *N.J.* 36, 49–50, 689 *A.*2d 702 (1997). "A common-law record is one that is made by a public official in the exercise of his or her public function, either because the record was required or

directed by law to be made or kept, or because it was filed in a public office." *Id.* at 49, 689 *A.*2d 702. In *Keddie,* the plaintiffs sought access to Rutgers' attorneys' bills and other legal documents. The Appellate Division had ruled that Rutgers was a public body covered by the Right–to–Know Law, *N.J.S.A.* 47:1A–1 to –4, and that the documents requested must be produced under that law. *Keddie v. Rutgers,* 286 *N.J.Super.* 285, 294, 669 *A.*2d 247 (App.Div.1996). This Court reversed the Appellate Division's determination that the requested documents were covered under the Right–to–Know Law because those documents were not required to be made, maintained or kept on file. *Keddie, supra,* 148 *N.J.* at 48, 689 *A.*2d 702. However, because the documents were created by "public officers in the exercise of a public function" and were filed "in a public office," they qualified as common-law records. *Id.* at 50, 689 *A.*2d 702. Therefore, any documents that satisfied the common-law balancing-of-interests test were to be made available to the plaintiffs. *Id.* at 50–54, 689 *A.*2d 702.

In *Rutgers v. Piscataway Township,* 1 *N.J.Tax* 164 (1980), the Tax Court determined that the Legislature intended to treat Rutgers' property as the equivalent of state property, and accordingly held that Rutgers qualified for an exemption from local property taxation. *Id.* at 169–71. Similarly, in *Rutgers v. Grad Partnership,* 269 *N.J.Super.* 142, 146, 149–51, 634 *A.*2d 1053, *certif. denied,* 135 *N.J.* 470, 640 *A.*2d 851 (1994), the Appellate Division held that Rutgers is a state agency for the purposes of the doctrine of *nullum tempus occurrit regi* (no time runs against the sovereign), and therefore that Rutgers was not restricted in pursuing a claim that otherwise would have been time barred. This Court also has held that Rutgers is a "public sector" employer in collective bargaining negotiations, and that accordingly Rutgers is required to negotiate only certain terms and conditions of employment because of its status as a "public sector" employer. *Rutgers v. Council of AAUP Chapters,* 256 *N.J.Super.* 104, 114–15, 606 *A.*2d 822 (App.Div.1992), *aff'd o.b.,* 131 *N.J.* 118, 618 *A.*2d 853 (1993).

Conversely, in other contexts courts have not accorded Rutgers the status of a state agency. In *Rutgers v. Kugler*, 110 *N.J.Super.* 424, 265 *A.*2d 847 (Law Div.1970), *aff'd o.b.*, 58 *N.J.* 113, 275 *A.*2d 441 (1971), the Law Division held that public bidding statutes do not apply to Rutgers because Rutgers was not subject to those statutes before the enactment of the Rutgers Law. *Id.* at 428–29, 434, 265 *A.*2d 847. In *Briscoe, supra*, the Law Division held that Rutgers is not a state agency subject to the New Jersey Contractual Liability Act. 130 *N.J.Super.* at 506, 327 *A.*2d 687. The Contractual Liability Act explicitly does not apply to a state agency "which is statutorily authorized to sue and be sued." *N.J.S.A.* 59:13–2. The Law Division viewed the Rutgers Law "as an amendment to an existing charter for an incorporated college." *Briscoe, supra*, 130 *N.J.Super.* at 502, 327 *A.*2d 687. Therefore, because Rutgers' pre–1956 charter included the power to sue and be sued, and the Rutgers Law did not purport to alter that authority, the Contractual Liability Act was held not to apply to Rutgers. *Id.* at 505–06, 327 *A.*2d 687.

Other courts also have wrestled with questions pertaining to Rutgers' "hybrid" status. In 1987 the Third Circuit held that Rutgers is not entitled to Eleventh Amendment immunity under the federal constitution. *Kovats v. Rutgers*, 822 *F.*2d 1303, 1312 (3rd Cir.1987). Generally, the Eleventh Amendment provides immunity to a "State" from suits filed by citizens in federal courts. *U.S. Const.* amend. XI. In determining whether Rutgers enjoyed such immunity, the Third Circuit considered whether the potential payment of a judgment would come from the state treasury, whether Rutgers performs a governmental function, Rutgers' degree of autonomy, and whether Rutgers has the power to sue and be sued. *Kovats, supra*, 822 *F.*2d at 1307. The Third Circuit concluded that "a majority of the relevant criteria weigh against considering Rutgers an arm of the state entitled to Eleventh Amendment immunity. . . . [I]t remains under state law an independent entity able to direct its own actions and responsible on its own judgments resulting from those actions." *Id.* at 1312.

Furthermore, because an entity that does not enjoy Eleventh Amendment immunity is considered a "person" subject to suit under 42 *U.S.C.A.* § 1983, *Monell v. New York City Dept. of Social Services*, 436 *U.S.* 658, 690 n. 55, 98 *S.Ct.* 2018, 2035 n. 55, 56 *L.Ed.*2d 611, 635 n. 55 (1978), the Third Circuit concluded that Rutgers can be sued under the federal civil rights laws. *Kovats, supra*, 822 *F.*2d at 1312 n. 10; *see also Fuchilla, supra*, 109 *N.J.* at 330, 537 *A.*2d 652 (holding that University of Medicine and Dentistry of New Jersey does not enjoy Eleventh Amendment immunity, and ·is a "person" within meaning of section 1983).

In *In re Executive Commission on Ethical Standards*, 116 *N.J.* 216, 561 *A.*2d 542 (1989), the Court considered "whether a Rutgers law professor conducting a clinical teaching program is to be regarded as a 'State employee' for purposes of the New Jersey Conflicts of Interest Law." *Id.* at 218, 561 *A.*2d 542. Third-year law students and recent graduates, under the supervision of a Rutgers law professor, represented clients before a state administrative agency, the Council on Affordable Housing. *Id.* at 218–19, 561 *A.*2d 542. The Court concluded "that a Rutgers University professor in a teaching clinic ... is not to be regarded as a State employee for purposes of the conflicts-of-interest law." *Id.* at 229, 561 *A.*2d 542. In reaching that conclusion, Justice O'Hern observed that "the absorption of Rutgers University within the framework of State-supported education has been marked by an overriding concern for the academic freedom of one of the nation's oldest and greatest universities." *Id.* at 223, 561 *A.*2d 542. Focusing on the legislative intent underlying the conflicts-of-interest law, the Court noted that "it was undoubtedly not within the contemplation or intent of the Legislature that the phrase, 'State employee,' under the New Jersey Conflicts of Interest Law ... apply to a university professor supervising a constitutional law clinic." *Ibid.*

"[I]t appears that whether or not a particular law is applicable to Rutgers depends upon a consideration of both the laws' general purposes, as well as the purposes of the Rutgers Law." *Keddie,*

*supra,* 286 *N.J.Super.* at 293, 669 *A.*2d 247. These cases suggest that the Rutgers Law created a public, but autonomous, institution. Therefore, unless public status would "frustrate the purposes of the Rutgers charter," *In re Executive Comm'n on Ethical Standards, supra,* 116 *N.J.* at 222, 561 *A.*2d 542, or the primary purpose of the underlying law or Rule, Rutgers ordinarily should be considered an "instrumentality of the State," *Keddie, supra,* 148 *N.J.* at 41, 689 *A.*2d 702.

## III

The rationale underlying *Rule* 4:3–2 is that the public interest would be prejudiced if public officials were required to defend lawsuits in distant venues. *Sinderbrand v. Schuster,* 170 *N.J.Super.* 506, 511, 406 *A.*2d 1344 (Law Div.1979)("The public interest would not be well served if the duties of public officials were disrupted or left unattended while they were forced to defend actions brought against them in distant counties which have little or no connection with the conduct that forms the basis of the suit."). "More recent decisions have indicated that the convenience of public bodies and officials is to be heavily weighed when questions regarding venue are at issue." *Ibid.*

Rutgers operates three campuses in New Jersey located in Essex, Middlesex and Camden counties. In this matter, the cause of action clearly arose in Essex County where Fine was employed at the Rutgers–Newark campus for his entire career. Most of the relevant witnesses and documents are located at the Rutgers–Newark campus. Requiring Rutgers to defend this complaint in a county other than Essex, even one that is "an adjoining county to the site of this dispute," undermines the policies fostered by *Rule* 4:3–2. The right of a litigant to choose his own forum is required to yield to the venue Rule's objective of minimizing inconveniences to public entity defendants.

Recognizing Rutgers' public status for purposes of the venue Rule would not frustrate the purpose of the Rutgers Law. Nor does it compromise Rutgers' autonomy to afford it the benefit of

the venue rule. To the contrary, Rutgers seeks recognition of its status as a public agency for venue purposes to vindicate its right to the same venue preference enjoyed by other public entities. The rationale that precludes the attribution of public agency status to Rutgers in section 1983 litigation or in Contractual Liability Act litigation is inapplicable in this context, in view of the purely procedural nature of the venue Rule. Moreover, to apply the venue Rule to Rutgers in some types of litigation but not in others would be awkward and logically inconsistent.

## IV

In our view, the purpose of *Rule* 4:3–2 would be undermined if Rutgers were required to litigate this employment-related claim outside of Essex County. Accordingly, we reverse the order of the Law Division, Bergen County denying Rutgers' motion to change venue and remand the matter to the Law Division, Essex County, for further proceedings.

*For reversal and remandment*—Chief Justice PORITZ and Justices O'HERN, STEIN, COLEMAN, LONG, VERNIERO and LAVECCHIA—7.

*Opposed*—None.