MENYUK, J.T.C.
Defendants Rutgers, the State University of New Jersey, and the Trastees of Rutgers College (collectively, “Rutgers”) have moved to dismiss the complaint for failure to state a claim upon which relief can be granted pursuant to R. 4:6-2. Defendant Township of Piseataway (“Township”) joins in the motion. For the reasons that follow, I conclude that Rutgers’ motion should be granted.
The complaint seeks to invalidate for tax year 2008 the exemption from local propei’ty taxation that has been granted to several apartment buildings owned by Rutgers and devoted to housing Rutgers’ graduate students with spouses or domestic or civil union partners and any dependent children. These buildings are referred to by the parties as Family Housing. The exemption was granted pursuant to N.J.S.A. 54:4-3.3, which exempts property of the State, among other public entities. The statute has been held to apply to Rutgers. Rutgers, The State University v. Piscataway Twp., 1 N.J.Tax 164,171 (Tax 1980).
*191 The plaintiff in this action is Russell E. Stoddard, who identifies himself as a citizen and owner of real property in the Township, a property taxpayer, and a member of the Piscataway Township Board of Education (“Board”). His status as a taxpayer of the Township is significant because virtually the same complaint was filed by the Board in October 2007 (Docket No. 010861-2007). On Rutgers’ motion, that complaint was dismissed on February 1, 2008 for lack of standing.[1] This appeal followed on the heels of that dismissal.
The tenor of the complaint is that the taxpayers of Piscataway have been unfairly burdened with the costs of providing the children living in Family Housing with free public school education. The complaint alleges that there were 53 such children during the 2006-2007 school year and 59 during the 2007-2008 school year. The complaint states that, during the 2007-2008 school year, the per pupil cost for regular education students ranged from $9,204 to $10,601, depending upon grade. It is further alleged that, if Family Housing was not exempt from local property taxation, the Township would receive additional revenues in excess of $4.5 million, “a substantial portion of which would be channeled to the Board for use in the operation of the Piscataway public school system.”
The basis for challenging the exemption is set forth in paragraphs 24 and 25 of the complaint as follows:
24. Under current circumstances, the provision of apartment-style living arrangements for adult Rutgers graduate students and their families, and elementary and secondary school-age dependent children, competing with the private housing-market in the Piscataway area, is an amenity that is not integral to the mission of Rutgers, is beyond the expected role of a public university, and does not constitute a public purpose.
25. Family Housing is presently envisioned by Rutgers as one element of a comprehensive growth strategy to explore and exploit revenue-enhancing opportunities. According to Rutgers University President Richard L. McCormick, these plans involve “the potential for adding several complimentary facilities, including a *192 hotel and conference center, residences for students and their families, recreational areas, a research park and appropriate commercial enterprises.”
Plaintiff alleges that he is entitled to a judgment that the tax exemption granted to Rutgers for Family Housing pursuant to N.J.S.A. 54:4-3.3 is invalid and must be revoked by the Township tax assessor effective as of tax year 2008. A second count of the complaint seeks a declaratory judgment that the tax exemption granted to Rutgers for Family Housing is invalid, that Family Housing is not exempt, and mandating that the tax assessor take such steps as are necessary to revoke the exemption for tax year 2008 and thereafter and to assess Family Housing “according to its proper value.”.
Because of the expansiveness of the relief sought by plaintiff, which seeks Family Housing’s permanent return to the tax rolls, it is necessary to address exactly what plaintiff is entitled to if he is successful in this action. Plaintiff may only seek to invalidate the exemption with respect to tax year 2008. The design of the real property taxation statutes contemplates that assessments (and appeals from assessments) are made on an annual basis.[2] See N.J.S.A 54:4-23 (requiring real property to be assessed on October 1 each year); N.J.S.A. 54:4-27 (preparing lists of exempt properties); N.J.S.A. 54:4-35 (requiring annual filing of the assessment list with the county board of taxation); N.J.S.A. 54:3-21 (providing for appeal by a taxpayer aggrieved by the valuation of property by April 1 of each year).
The courts of this State have repeatedly held that the right to appeal in tax matters is exclusively statutory and that the appellant must comply with all applicable statutory requirements. F.M.C. Stores Co. v. Borough of Morris Plains, 100 N.J. 418, 424, 495 A.2d 1313 (1985); City of Newark v. Fischer, 3 N.J. 488, 493, *193 70 A.2d 733 (1950); Macleod, v. City of Hoboken, 330 N.J.Super. 502, 505-06, 750 A.2d 152 (App.Div.2000). N.J.S.A 54:3-21 provides the process by which appeals are taken from real property assessments. In re Appeal of Township of Monroe from Determination of Local Finance Board, 289 N.J.Super. 138, 145, 673 A.2d 279 (App.Div.1995), certif. denied, 144 N.J. 172, 675 A.2d 1121 (1996). The courts of this state have also long recognized that actions seeking to contest tax exemptions are tax appeals that must be brought pursuant to N.J.S.A. 54:3-21. See, e.g., Brunson v. Rutherford Lodge No. 547 of the Benevolent and, Protective Order of Elks, 128 N.J.Super. 66, 72, 319 A.2d 80 (Law Div.1974) (citing cases).
An assessor may inquire at any time as to a claimant’s continued entitlement to exemption. N.J.S.A. 54:4-4.4. However, in the absence of claims of res judicata or collateral estoppel, or of any issues implicating the entire controversy doctrine, R. 4:30A, Rutgers may continue to claim exemption for Family Housing in succeeding tax years and plaintiff may again seek to invalidate any exemption granted to Rutgers. See generally Fort Lee Bor. v. Director, Div. of Taxation, 14 N.J.Tax 126, 133-41 (Tax 1994) (discussing the three preclusionary doctrines). Plaintiff is not entitled to a judgment determining the validity of the Family Housing exemption for years beyond 2008.
In this motion, Rutgers contends that: (1) Rutgers’ property has been determined to be property of the State of New Jersey for purposes of local property tax exemption and as state property, no public purpose is necessary for Family Housing to qualify for exemption; and (2) alternatively, case law and the statutory authority granted to Rutgers demonstrates that Family Housing-serves a public purpose.
The standard for the grant of a Rule 4:6-2 motion to dismiss a complaint for failure to state a claim was set forth by our Supreme Court in Printing Mart-Morristown v. Sharp Electronicx Corp., 116 N.J. 739, 563 A.2d 31 (1989). A court must test the adequacy of a pleading by determining whether a cause of action is suggested by the facts alleged in the complaint, without *194 regard to the ability of the plaintiff to prove those facts. Id. at 746, 563 A.2d 31. The plaintiff will be provided with the opportunity to amend his complaint if necessary. Ibid. “For purposes of analysis plaintiffs are entitled to every reasonable inference of fact. The examination of a complaint’s allegations of fact required by the aforestated principles should be one that is at once painstaking and undertaken with a generous and hospitable approach.” Ibid, (citation omitted). Trial courts are directed “to approach with great caution applications for dismissal under Rule 4:6-2(e) for failure ... to state a claim.” Id. at 771-72, 563 A.2d 31. “[S]ueh motions ... should be granted in only the rarest of instances.” Id. at 772, 563 A.2d 31.
Rutgers emphasizes that a complaint must allege facts which, if established, would support the plaintiffs claim for relief and that plaintiff may not simply assert legal conclusions in order to survive a motion made pursuant to R. 4:6-2. See, e.g., Sickles v. Cabot Corp., 379 N.J.Super. 100, 106, 877 A.2d 267 (App.Div.2005), certif. denied, 185 N.J. 297, 884 A.2d 1267 (2005) (“[A] court must dismiss the plaintiffs complaint if it has failed to articulate a legal basis entitling plaintiff to relief.”). See also Camden County Energy Recovery Assocs., L.P. v. New Jersey Dep’t of Envtl. Prot., 320 N.J.Super. 59, 64, 726 A.2d 968 (App.Div.1999), aff'd, 170 N.J. 246, 786 A.2d 105 (2001), where the court concluded that no party had articulated a legal basis entitling it to relief, noting “[djiseovery is intended to lead to facts supporting or opposing an asserted legal theory; it is not designed to lead to formulation of a legal theory.”
Plaintiff, on the other hand, contends that the issue of whether housing for the families of graduate students at a public university qualifies as a public purpose for exemption under N.J.S.A. 54:4-3.3 is a novel issue with broad social or legal ramifications, and that the parties should be given the opportunity to develop a full factual record. See D'Alia v. Allied-Signal Corp., 260 N.J.Super. 1, 614 A.2d 1355 (App.Div.1992) (reversing grant of summary judgment on the issue of whether plaintiff had provided adequate notice of her claim under the then recently enacted Family Leave Act, N.J.S.A. 34:11B-1 through -16); Jackson v. Muhlenberg *195 Hosp., 53 N.J. 138, 249 A.2d 65 (1969) (reversing a grant of partial summary judgment on a meager factual record where the ruling sought would reach far beyond the particular case).
If Rutgers is correct that the subject property, being state property, need not be used for a public purpose in order to qualify for exemption, then plaintiffs complaint plainly fails to state a claim upon which relief can be granted. It is not disputed that Rutgers owns the subject property or that Rutgers is an instrumentality of the state. See Fine v. Rutgers, The State University of New Jersey, 163 N.J. 464, 750 A.2d 68 (2000), which reviewed the contexts in which Rutgers has and has not been accorded the status of a state agency, and held that “unless public status would ‘frustrate the purposes of the Rutgers charter,’ or the primary purpose of the underlying law or Rule, Rutgers ordinarily should be considered an ‘instrumentality of the State.’ ” Id. at 472, 750 A.2d 68 (citations omitted). In reaching that conclusion, the Court cited and discussed Rutgers v. Piscataway Twp., supra, 1 N.J.Tax 164, in which “the Tax Court determined that the Legislature intended to treat Rutgers’ property as the equivalent of state property, and accordingly held that Rutgers qualified for an exemption from local property taxation.” Fine, supra, 163 N.J. at 469, 750 A.2d 68. See also N.J.S.A 18A:65-2, a section of the Rutgers, state university law, N.J.S.A. 18A:65-1 to -73, which provides in pertinent part:
[TJhe property and educational facilities, rights and privileges of [Rutgers'] are and shall continue to be impressed with a public trust for higher education of the people of the state of New Jersey; and which is the instrumentality of the state for the purpose of operating the state university.
ÍNJ.S.A. 18A:6o-2.]
Rutgers contends that the plain language of N.J.S.A. 54:4-3.3 evidences an intent that state property be exempt from taxation regardless of its use. It relies on the language and grammatical construction of the statute, which states: “[T]he property of the State of New Jersey; and the property of the respective counties, school districts and taxing districts used for public purposes ... shall be exempt from taxation under this chapter.” Rutgers argues that the semi-colon after “State of New Jersey” suggests that the public use requirement does not apply *196 to state property, but only to counties, school districts and taxing districts, citing State v. Eatontown Bor., 366 N.J.Super. 626, 841 A.2d 990 (App.Div.2004).
In State v. Eatontown, the issue was whether property owned by the State and used as a Division of Motor Vehicles inspection station operated by a private entity pursuant to a contract with the State was exempt from local property taxation pursuant to N.J.S.A. 54:4-3.3. Id. at 630, 841 A.2d 990. The Appellate Division affirmed the Tax Court, which had held that property for which timely appeals had been brought by the State were exempt, because N.J.S.A. 54:4-3.3 “conditions exemption from taxation only upon state ownership of the property, and not the nature of the property’s use.” Id. at 631, 841 A.2d 990. Notably, however, the property was being used for a public purpose in that case, and the real issue was whether the profit-making nature of the entity operating the inspection station on behalf of the State destroyed the exemption. Id. at 632, 841 A.2d 990.
Rutgers argues that while both New Jersey Turnpike Authority v. Township of Washington, 16 N.J. 38, 106 A.2d 4 (1954), and Township of Holmdel v. New Jersey Highway Authority, 190 N.J. 74, 918 A.2d 603 (2007) questioned the constitutionality of tax exemptions based on ownership rather than use, those eases are distinguishable because the property was not “state property.” In New Jersey Turnpike Authority v. Township of Washington, the claim for exemption was based on N.J.S.A. 27:23-12, a section of the Turnpike Authority’s enabling legislation that specifically provided for exemption of “property acquired or used by the Authority under the provisions of this act.” New Jersey Turnpike Auth., supra, 16 N.J. at 44, 106 A.2d 4. The Court held that “claims for tax exemption have to stand scrutiny to show that they serve a public purpose.” Ibid. The Court rejected the contention that the Turnpike Authority was the alter ego of the State and therefore exempt. “[T]he Turnpike Authority, and public corporations generally ... ‘[tjhough created by the State and subject to dissolution by the State ... are in the eyes of the law independent entities and the State is not responsible for their debts and liabilities ____’” Id. at 46, 106 A.2d 4 (citation omitted). Cf. N.J.S.A *197 18A:65-8 (“No provision in this chapter [pertaining to Rutgers] shall be deemed or construed to create or constitute a debt, liability, or a loan or pledge of the credit, of the state of New Jersey.”).
Township of Holmdel v. New Jersey Highway Authority involved the eligibility for exemption of certain facilities at the arts center complex owned by the Authority and operated by private entities. The Court concluded that the Legislature may only grant exemptions by general laws and must base an exemption on the property’s use pursuant to N.J. Const. art. VIII, § 1, ¶2, and N.J. Const. art. IV, § 7, ¶ 9(6). Holmdel Tp. v. N.J. Hwy. Auth., supra, 190 N.J. at 87, 918 A.2d 603. “[I]t is unconstitutional to award tax exemptions simply because a government agency owns the subject property.” Ibid.. The Court noted that judicial construction of statutory tax exemptions is subject to the principle that the primary goal of the court is to determine the legislative intent, and that the best indicator of legislative intent is the statutory language. Holmdel Tp. v. N.J. Hwy. Auth., supra, 190 N.J. at 87, 918 A.2d 603. “[TJhe decision turn[s] upon the intention of the Legislature in the statute creating the agency and providing for the exemption.’ ” Ibid, (quoting Walter Reade, Inc. v. Dennis, 36 N.J. 435, 441, 177 A.2d 752 (1962)).
Rutgers’ property and educational facilities are “impressed with a public trust for higher education of the people of the state of New Jersey.” N.J.S.A 18A:65-2. See generally Trustees of Rutgers College v. Richman, 41 N.J.Super. 259, 269, 125 A.2d 10 (Ch.Div.1956) (recounting the history of Rutgers from colonial times and its eventual creation as the State University, and stating “in 1945 Rutgers was recognized by the State and the Board of Trustees as a university, the State University, an instrumentality of the State; and all its parts became subject to a public trust for higher education under the general superintendence of the State Board of Education”) (citations omitted). I conclude that it was the intention of the Legislature that Rutgers’ property be used in fm’therance of its status as “the instrumentality of the state for the purpose of operating the state university,” N.J.S.A. 18A:65-2, and that it is only property that is used for the purpose of *198 operating the state university that is eligible for exemption. Further, Rutgers’ reading of N.J.S.A 54:4-3.3 raises serious questions as to the constitutionality of the exemption. I therefore reject Rutgers’ contention that its property need not be used for a public purpose in order to be entitled to exemption.
Rutgers contends that, even if Family Housing is not exempt solely by virtue of its ownership by Rutgers, it nevertheless serves a public purpose, asserting that it is beyond dispute that maintaining student housing is within the Legislature’s grant of authority to Rutgers. The courts of this state have generally concluded that the provision of housing is an appropriate purpose for a university or college. See, e.g., Trustees of Rutgers College v. Township of Piscataway, 20 N.J. Misc. 127, 25 A.2d 248 (Bd. of Tax Appeals 1942), aff'd sub nom., Township of Piscataway v. State Bd. of Tax Appeals, 129 N.J.L. 261, 29 A.2d 389 (Sup.Ct. 1942), aff'd, 131 N.J.L. 158, 35 A.2d 711 (E. & A.1944), which found that a residence for the president of the university was exempt pursuant to N.J.S.A. 54:4-3.6 as then in effect (exempting property “actually used for colleges ... and which is devoted to [that] purpose and to no other purposes”). The property in that case was intended to serve as the president’s personal residence and also to serve the purpose of an administrative center and meeting place for the university. Id. at 128-29, 25 A.2d 248. See also State v. Ross, 24 N.J.L. 497 (Sup.Ct.1854) (concluding that the residences of the president and vice president and faculty and the buildings occupied by students of the former College of New Jersey, now known as Princeton University, were entitled to exemption as within the purpose of the original university charter); Fairleigh Dickinson Univ. v. Florham Park Bor., 5 N.J.Tax 343, 354 (Tax 1983) (finding all buildings on a university campus, including dormitories, were entitled to exemption as buildings actually used for colleges under N.J.S.A. 54:4-3.6).
Rutgers also relies upon the statutory authority granted to it by the Legislature to purchase land and buildings and manage and maintain all properties utilized by the university. N.J.S.A. 18A:65-25(f) and (g). See also N.J.S.A. 18A:65-27(I)(a) and (b) (a declaration that it is the policy of the State that the university *199 shall be given a high degree of self-government and that resources be provided by the State for the conduct of a State University with high educational standards to meet the cost of increasing enrollment and the need for proper facilities). N.J.S.A. 18A:65-9 specifically provides:
This chapter, being deemed and hereby declared necessary for the welfare of the state and the people of New Jersey to provide for the development of public higher education in the state and thereby to increase the efficiency of the public school system of the state, shall be liberally construed to effectuate the purposes and intent thereof.
Rutgers contends that these statutory provisions, taken together, support the conclusion that Rutgers has been authorized by the Legislature to provide and operate student housing.
Plaintiff grudgingly concedes, “for argument’s sake,” that student housing falls within the mission of a college or university. I conclude from the previously cited case law that there remains no doubt that providing residential housing for its students is an appropriate undertaking by a university, and that the Legislature has given Rutgers ample authority to construct and maintain such housing in furtherance of its mission as the state university. Student housing in general, then, constitutes a public purpose for a state university.
Plaintiff counters by asserting that Family Housing serves not only as housing for students, but for spouses, domestic partners, and children of students, and that there is no public purpose in providing housing for these additional persons. However, courts have concluded that property owned by a state authority is eligible for exemption even where there is only a minimal public purpose. See, e.g., South Jersey Transp. Auth. v. City of Pleasantville, 312 N.J.Super. 438, 712 A.2d 215 (App.Div.1998) (holding that a billboard for the display of commercial advertisements erected along a highway owned by the Authority from which the Authority obtained incidental revenue was exempt from taxation, and reversing the Tax Court, which had found that the billboards did not serve a public purpose).
More significantly, it is the public policy of this state that all persons “have the opportunity to obtain ... all the accommoda *200 tions, advantages, facilities and privileges of ... publicly assisted housing accommodation, and other real property -without discrimination because of ... age, marital status, [or] familial status ... subject only to conditions and limitations applicable alike to all persons.” N.J.S.A. 10:5-4. See also N.J.S.A. 10:5-9.1 (providing for enforcement of laws against discrimination in housing built with public funds because of, among other things, marital status and familial status); N.J.S.A. 10:5-12(h)(5) (making it unlawful discrimination to refuse to rent or lease property to another person because that person’s family includes children under 18 years of age). I conclude that the public purpose of providing housing for graduate students together with their spouses, domestic or civil union partners, and their children does not destroy the public purpose of providing student housing; rather, it advances other important policies of the State embodied in the Law against Discrimination.
Plaintiff dismisses as dicta the explicit finding of the New Jersey Supreme Court in Rutgers, The State University v. Piluso, 60 N.J. 142, 286 A.2d 697 (1972) that Rutgers’ proofs demonstrated “beyond question” the public need for the then-proposed student family housing. Id. at 147-48, 286 A.2d 697.
These proofs showed that, as of the time of the agency hearing, there were almost 10,000 full and part-time students enrolled on the New Brunswick campuses, and that the enrollment there is expected to increase to something- over 19,000 by 1980. The present number of full-time graduate students is 1,788, of whom about half are married, and the projected number in 1980 is about 5,900, of whom again approximately half will be married. Graduate students, for whom the planned garden apartments are primarily designed, play an indispensable role in assisting in undergraduate instruction and will not come to this institution absent available accommodations for themselves and their families. There is .already such a shortage of facilities for this purpose that all the proposed units will be immediately used. It is estimated that a minimum of 1,500 apartments will be required for such purposes by 1980.
[Id. at 148, 286 A.2d 697].
The issue in Piluso was whether Rutgers was subject to the Township zoning ordinance, which “purported to allow unlimited housing facilities for unmarried students, but to arbitrarily restrict the number of those which could be used by married students and their families.” Id. at 147, 286 A.2d 697. Plaintiff argues that zoning issues and tax exemptions involve different concerns, citing *201 Medical Center at Princeton v. Township of Princeton Zoning Board of Adjustment, 343 N.J.Super. 177, 202, 778 A.2d 482 (App.Div.2001), and Town of Morristown v. Woman’s Club of Morristown, 124 N.J. 605, 617, 592 A.2d 216 (1991). The latter ease was a challenge to a local property tax exemption for an historic site owned by a non-profit corporation. Our Supreme Court found it helpful to refer to land use legislation designed to preserve historical landmarks in concluding that historic preservation served a public purpose. Id. at 615-17, 592 A.2d 216. As noted by the Appellate Division in the Princeton case, tax exemption eases, by analogy, “provide assistance in understanding, conceptually” issues necessary to determine a zoning question. Med. Ctr. at Princeton, supra, 343 N.J.Super. at 202, 778 A.2d 482.
Plaintiff has not alleged that Family Housing is being used in a manner inconsistent with the purpose for such housing found in Pituso, supra, 60 N.J. at 148, 286 A.2d 697, but alleges only that “under current circumstances,” Family Housing is an amenity that is not integral to the mission of Rutgers. The complaint does not set forth what those circumstances are. Plaintiffs brief (but not his complaint) makes a passing reference to a study indicating a recent trend among graduate students toward delaying marriage. Plaintiff does not allege, however, that Family Housing is underutilized. Rather, plaintiffs grievance is that Family Housing is, in fact, being utilized. When specifically asked at oral argument whether plaintiff was alleging a change in circumstances, plaintiffs counsel would neither admit nor deny such a change, but insisted the pleading was adequate.
The complaint does set forth factual allegations that are irrelevant to the issue of entitlement to exemption. First, plaintiff states that Family Housing is a “profit center” and competes with the private housing market. There is no “not for profit” test explicitly set forth by N.J.S.A. 54:4-3.3. The property of a public entity used for the public purposes contemplated by its enabling legislation has generally been deemed to be exempt even though a private for profit entity actually operates the facility. N.J. Hwy. Auth., supra, 190 N.J. at 88, 918 A.2d 603. See also South Jersey Transp. Auth. v. City of Pleasantville, 312 N.J.Super. 438, 712 *202 A 2d 215 (App.Div.1998) (billboard for the display of commercial advertisements erected along a highway owned by the Authority was exempt from taxation). The test for exemption of property owned by private entities under N.J.S.A. 54:4-3.6 is whether the profits can find their way into anyone’s pocket. Paper Mill Playhouse v. Millburn Twp., 95 N.J. 503, 527, 472 A.2d 517 (1984). Accordingly, I conclude that even if Family Housing is a profit center for Rutgers, that fact is irrelevant without some allegation that the alleged profits are being used for something other than for purposes that have been statutorily authorized. See Hunterdon Med. Ctr. v. Readington Twp., 22 N.J.Tax 302, 318 (Tax 2005), aff'd, 391 N.J.Super. 434, 918 A.2d 675 (App.Div.2007), aff'd in part and rev’d in part on other grounds, 195 N.J. 549, 951 A.2d 931 (2008) (hospital’s health club not operated for profit where revenues were used in purchasing equipment and other improvements used by the hospital). The fact that Family Housing competes with the private housing market is similarly irrelevant, at least without some allegation that Rutgers charges its graduate students market rents which, by itself, may not be sufficient to demonstrate a profit-making purpose. Id. at 318-19 (concluding that hospital’s health club was not operated for the purpose of making a profit, even though it had a fee structure competitive with similar area facilities).
Second, plaintiff alleges that Family Housing is an element of Rutgers’ “comprehensive growth strategy to explore and exploit revenue-enhancing activities.” According to plaintiff, these plans include construction of a hotel and conference center, additional residences for students and their families, recreational areas, a research park and appropriate commercial enterprises. If Rutgers actually constructs any of these facilities, and if it applies for exemption, the assessor will make a determination as to eligibility and plaintiff may challenge any exemption that is granted. As even Rutgers’ counsel conceded at oral argument, if the court rejects the argument that Rutgers’ property need not be used for a public purpose in order to be eligible for exemption, then thei’e are limits to the uses to which Rutgers may put its property and still be entitled to exemption. At issue in this case, however, is *203 whether Family Housing was eligible for exemption as of October 1, 2007, the valuation date for tax year 2008. N.J.S.A. 54:4-23; see also Atlantic County New School, Inc. v. City of Pleasantville, 2 N.J.Tax 192, 195-96 (Tax 1981). Any future plans that Rutgers may have for further development have no bearing on whether Family Housing is presently entitled to exemption.
A complaint must “contain a statement of the facts on which the claim is based, showing that the pleader is entitled to relief.” R. 4:5-2. Plaintiffs complaint contains a general description of how Family Housing is used, which Rutgers accepts, as it must, for purposes of the motion. Printing Mari, supra, 116 N.J. at 746, 5(53 A.2d 31. There is nothing in those facts which would lead to the conclusion that Family Housing was not operated for legitimate university purposes. As detailed above, other facts alleged by plaintiff are irrelevant to a determination of whether Family Housing is entitled to exemption. I conclude that plaintiffs complaint is no more than his opinion that under current unspecified circumstances, Family Housing is different in character than a dormitory for single students, and that it is an amenity that is not integral to the mission of Rutgers.
As stated by the Township’s counsel, this dispute is the result of “the inability of sister governmental units to work out their differences, all at the expense of Piscataway taxpayers.” Further evidence of the political nature of this dispute is contained in plaintiffs brief, which cites a newspaper article in which plaintiffs counsel, as general counsel for the Board, is reported to have outlined the Board’s plans for litigation intended to “change public policy” so that the State will compensate Piscataway for its education of pupils residing in Family Housing. David K. Randall, District Says Free Ride Must End, N.Y. Times, August 5, 2007 (New York Region at 2). Plaintiffs counsel was quoted as stating that the Board plans to explore at least three legal remedies, one of which was, apparently, the previous suit filed by the Board challenging the exemption that is at issue here. Ibid. The article also reports that a former Township mayor, currently a state senator, “ruled out a legislative solution, which would take money from the state’s educational funds to pay a local district. *204 ‘It’s a nonstarter for the Legislature even though from a point of view of fairness it really should be done.’ ” Ibid.
Rutgers points out that plaintiffs concerns regarding the costs of educating children residing in Family Housing have already been considered and addressed by the Legislature. N.J.S.A. 54:4-2.2b provides that State property is subject to an in lieu of tax payment to compensate municipalities for the impact upon local government costs of local services to State property. That payment is now part of a larger aid payment to municipalities called Consolidated Municipal Property Tax Relief Aid (“CMPTRA”). See N.J.S.A 52:27D-442; L. 1995, c. 164, at 1040-42. Plaintiff responds that there is no basis for the assertion that the current CMPTRA payment to Piscataway defrays the cost of educating children residing in Family Housing, since the payment has been frozen at the 1994 level and costs have increased sharply over time.
The real point is that the Legislature has not increased aid to Piscataway because it provides schools for children living in Family Housing. The judgment to change public policy in this regard is one that must be made by the Legislature, and not by this court.
While it may be plaintiffs opinion that Family Housing is an unnecessary amenity, the case law is clear that student housing is an appropriate university purpose, and there are no facts alleged in the complaint that would support the conclusion that Family Housing does not serve a public purpose authorized by the Legislature. At oral argument, plaintiffs counsel suggested that discovery would permit plaintiff to find facts evidencing the lack of public purpose. “It is not enough for plaintiff! ] to assert, as [he] did at argument of the motion, that any essential facts that the court may find lacking can be dredged up in discovery. A plaintiff can ‘bolster a ... cause of action through discovery, but not [ ] file a conelusory complaint to find out if one exists.’ ” Printing Mart, supra, 116 N.J. at 768, 563 A.2d 31 (citation omitted).
I find that the complaint fails to state a claim upon which relief can be granted. I am mindful of our Supreme Court’s direction *205 that a motion brought pursuant to R. 4:6-2(e) should only be rarely granted. Id. at 772, 563 A.2d 31. The Court has also warned that, if a complaint must be dismissed for failure to state a claim, the dismissal should be without prejudice to the plaintiffs filing of an amended complaint, “barring any other impediment such as a statute of limitations.” Ibid.
Complaints contesting assessments must be filed by April 1 of the tax year in question. N.J.S.A. 54:3-21. As noted earlier, N.J.S.A. 54:3-21 is applicable to complaints contesting exemptions. Any amended complaint filed by plaintiff at this point would therefore be out of time. The complaint must, therefore, be dismissed with prejudice. As also explained earlier, the right to appeal an exemption is also annual, and plaintiff may file a complaint with factual allegations that state a basis for the denial of any exemption that may be granted to Family Housing for tax year 2009.
For the foregoing reasons, Rutgers’ motion to dismiss the complaint with prejudice for failure to state a claim is granted.

 The reasons for the dismissal were set forth in a bench opinion. See NJ.S.A. 54:3-21, which permits appeals by taxpayers and taxing districts but not school boards. There is no question that NJ.S.A. 54:3-21 permits a taxpayer to challenge the assessment of other property in the municipality.

 There is a limited exception for a taxpayer who successfully challenges his or her own assessment. See N.J.S.A. 54:3-26 (applicable to judgments of the county boards of taxation) and N.J.S.A. 54:51A-8 (applicable to judgments of the Tax Court) which "freeze" the assessment for the year appealed from and the two succeeding years. The freeze statutes do not apply to cases where exemption is claimed. Boys' Club of Clifton, Inc. v. Township of Jefferson, 12 N.J. 389, 405, 371 A.2d 22 (1977).